ORAL ARGUMENT SCHEDULED FOR APRIL 26, 2023

No. 22-5277

═══════════════════════════════════════════

# In the United States Court of Appeals
# for the District of Columbia Circuit

─────────────────────────────────────────

END CITIZENS UNITED PAC,

*Plaintiff-Appellant,*

v.

FEDERAL ELECTION COMMISSION,

*Defendant-Appellee,*

NEW REPUBLICAN PAC,

*Intervenor-Defendant-Appellee.*

─────────────────────────────────────────

## INTERVENOR-APPELLEE'S BRIEF

─────────────────────────────────────────

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA,
No. 1:21-CV-2128-RJL

─────────────────────────────────────────

JASON B. TORCHINSKY          HOLTZMAN VOGEL BARAN
EDWARD M. WENGER          TORCHINSKY & JOSEFIAK PLLC
PHILLIP M. GORDON          2300 N Street NW, Suite 643A
KENNETH C. DAINES          Washington, DC 20037
ZACHARY HENSON          *pgordon@holtzmanvogel.com*
*jtorchinsky@holtzmanvogel.com*          *kdaines@holtzmanvogel.com*
*emwenger@holtzmanvogel.com*          *zhenson@holtzmanvogel.com*
(202) 737-8808 (phone)          (540) 341-8809 (facsimile)

*Counsel for Intervenor-Appellee*

**CERTIFICATE AS TO PARTIES, RULINGS & RELATED CASES**

Pursuant to Circuit Rule 28(a)(1), Intervenor-Appellee New Republican PAC submits its Certificate as to Parties, Rulings, and Related Cases.

**A.     Parties and Amici:** End Citizens United PAC was the plaintiff before the District Court and appears as Appellant before this Court. The Federal Election Commission was the named defendant before the District Court but never appeared before that court and is an Appellee before this Court and has not appeared in this appeal.

New Republican PAC ("New Republican") was an intervenor-defendant before the District Court and appears as Intervenor-Appellee before this Court. Pursuant to Circuit Rule 26.1, New Republican certifies that it has no parent companies, subsidiaries, or affiliates. New Republican has no outstanding securities in the hands of the public, and no company possesses a 10% or greater ownership interest in New Republican. New Republican is registered with the Federal Election Commission as an independent-expenditure-only political committee, more commonly known as a "Super PAC," whose purpose is to help rebrand the Republican Party in favor of a framework consistent with conservative principles.

Citizens for Responsibility and Ethics in Washington is *amicus curiae* for Appellant.

**B.     Rulings Under Review:** End Citizens United appeals the September 16, 2022 memorandum opinion (ECF 36) and order (ECF 37) of the United States District Court for the District of Columbia (Leon, J.) in Civil Action No. 1:21-cv-128, granting Defendant-Intervenor New Republican PAC's Cross-Motion for Summary Judgment and denying Plaintiff End Citizens United PAC's Motion for Default Judgment, or, in the Alternative, for Summary Judgment. The September 16, 2022 Memorandum Opinion is not published in the federal reporter but can be found in the Joint Appendix at JA097–113.

**C.     Related Cases:** The appealed ruling has not previously been before this Court or any other court. Counsel for Intervenor-Appellee is unaware of any related cases pending in this Court or any other court.

# TABLE OF CONTENTS

CERTIFICATE AS TO PARTIES, RULINGS & RELATED CASES ................... i

TABLE OF CONTENTS ........................................................................ iii

TABLE OF AUTHORITIES ................................................................. v

GLOSSARY OF ABBREVIATIONS .................................................... viii

STATEMENT OF JURISDICTION ........................................................ 1

STATEMENT OF THE ISSUES ............................................................ 2

CONSTITUTIONAL, STATUTORY, AND REGULATORY PROVISIONS ....... 3

STATEMENT OF THE CASE & FACTS ............................................... 3

I.      IN THE 1970S, CONGRESS ENACTED FECA AND CREATED THE FEC ............... 3

II.     BASED ON LITTLE MORE THAN RANK CONJECTURE, END CITIZENS UNITED BRINGS TWO FEC COMPLAINTS AGAINST NEW REPUBLICAN PAC AND SENATOR RICK SCOTT. ........................................................... 7

III.    THE COMMISSIONERS' DEADLOCK AT THE REASON-TO-BELIEVE STAGE RESULTED IN DISMISSAL OF BOTH END CITIZENS UNITED'S ADMINISTRATIVE COMPLAINTS. ................................................. 9

IV.     END CITIZENS UNITED TRIES, BUT FAILS, TO CONVINCE THE DISTRICT COURT THAT THE FEC'S DISMISSAL WAS CONTRARY TO LAW. ................... 11

SUMMARY OF THE ARGUMENT ..................................................... 14

STANDARD OF REVIEW .................................................................. 16

ARGUMENT ................................................................................... 16

I.      BECAUSE THE COMMISSION EXERCISED ITS PROSECUTORIAL DISCRETION WHEN DISMISSING END CITIZENS UNITED'S FIRST ADMINISTRATIVE COMPLAINT, IT CANNOT BE REVIEWED BY A FEDERAL COURT. ................................ 16

        A.    End Citizens United's proposed end run around this Court's precedent has no sound basis in law, fact, or logic. ............................... 17
        B.    *New Models* and *Commission on Hope* were correctly decided. ........... 25

II.     THE DISTRICT COURT'S DEFERENCE TO THE COMMISSION'S DISMISSAL OF MUR 7496 WAS PLAINLY CORRECT. ........................................... 28

CONCLUSION ................................................................................ 33

CERTIFICATE OF COMPLIANCE ........................................................35

CERTIFICATE OF SERVICE ...............................................................36

ADDENDUM ........................................................................................37

# TABLE OF AUTHORITIES

**Cases**                                                                                 **Page(s)**

*Akins v. FEC,*
    736 F. Supp. 2d 9 (D.D.C. 2010) ............................................................... 27, 32

*Ass'n of Civilian Technicians v. Fed. Labor Rels. Auth.,*
    283 F.3d 339 (D.C. Cir. 2002) ................................................................... 18, 20

\* *Campaign Legal Ctr. & Democracy 21 v. FEC,*
    952 F.3d 352 (D.C. Cir. 2020) ....................................... 2, 15, 26, 28, 30, 31, 33

*Citizens for Responsibility & Ethics in Wash. v. FEC,*
    380 F. Supp. 3d 30 (D.D.C. 2019) .................................................................... 18

\* *Citizens for Responsibility & Ethics in Wash. v. FEC,*
    892 F.3d 434 (D.C. Cir. 2018) .............................. 14, 16, 17, 18, 19, 24, 25, 27

\* *Citizens for Responsibility & Ethics v. FEC,*
    993 F.3d 880 (D.C. Cir. 2021) ................ 1, 2, 14, 16, 18, 19, 23, 24, 25, 27, 32

*Common Cause v. FEC,*
    108 F.3d 413 (D.C. Cir. 1997) .......................................................................... 6

*Crossroads Grassroots Policy Strategies v. FEC,*
    788 F.3d 312 (D.C. Cir. 2015) ..................................................................... 5, 12

*Crowley Caribbean Transp. v. Pena,*
    37 F.3d 671 (D.C. Cir. 1994) .......................................................................... 18

*FEC v. Akins,*
    524 U.S. 11 (1998) .................................................................................... 26, 27

\* *Fed. Election Comm'n v. Democratic Senatorial Campaign Comm.,*
    454 U.S. 27 (1981) ........................................................... 2, 15, 28, 30, 31, 33

*Fed. Election Comm'n v. Nat'l Republican Senatorial Comm.,*
    966 F.2d 1471 (D.C. Cir. 1992) ........................................................................ 6

\* *Heckler v. Chaney,*
    470 U.S. 821 (1985) ............................................................. 10, 14, 16, 19, 24

---

\* Authorities upon which we chiefly rely are marked with asterisks.

*In re Sealed Case*,
   223 F.3d 775 (D.C. Cir. 2000) ........................................................... 4

*Interstate Commerce Com v. Bhd. of Locomotive Eng'rs*,
   482 U.S. 270 (1987) ........................................................................ 20

*Orloski v. Fed. Election Com.*,
   795 F.2d 156 (D.C. Cir. 1986) ........................................ 6, 13, 28, 30

*Oryszak v. Sullivan*,
   576 F.3d 522 (D.C. Cir. 2009) ...................................................... 1, 17

*People for the Ethical Treatment of Animals v. USDA*,
   797 F.3d 1087 (D.C. Cir. 2015) ................................................... 17, 26

*Pub. Citizen, Inc. v. FERC*,
   839 F.3d 1165 (D.C. Cir. 2016) ...................................................... 5, 6

*Sierra Club & Valley Watch, Inc. v. Jackson*,
   648 F.3d 848 (D.C. Cir. 2011) ........................................................ 27

**Constitutional Provisions**

U.S. Const. art. II, § 3 ........................................................................ 24

**Statutes**

5 U.S.C. § 701(a)(2) .......................................................................... 26

28 U.S.C. § 1291 .................................................................................. 1

28 U.S.C. § 1331 .................................................................................. 1

52 U.S.C. § 30101(2) ........................................................................... 3

52 U.S.C. § 30102(e)(1) ....................................................................... 3

52 U.S.C. § 30103(a) ........................................................................... 3

52 U.S.C. § 30106(a)(1) ....................................................................... 4

52 U.S.C. § 30106(c) ........................................................................... 5

52 U.S.C. § 30109(a)(4)(A)(i) ............................................................... 5

52 U.S.C. § 30109(a)(6)(A) .................................................................. 5

52 U.S.C. § 30109(a)(8)(A) .................................................................. 1

---

\* Authorities upon which we chiefly rely are marked with asterisks.

52 U.S.C. § 30109(a)(8)(C) ............................................................. 13, 16

52 U.S.C. § 30109(a)(9) ..................................................................... 1

52 U.S.C. § 30143(a) ......................................................................... 4

**Regulations**

11 C.F.R. § 100.72 ............................................................................. 3

11 C.F.R. § 100.72(b) ....................................................................... 21

11 C.F.R. § 101.1(a) ........................................................................... 3

11 C.F.R. § 111.7(a) ........................................................................... 5

**Rules**

Fed. R. App. P. 32(a)(5) .................................................................. 35

Fed. R. App. P. 32(a)(7)(B)(i) ......................................................... 35

Fed. R. App. P. 32(e)(1) .................................................................. 35

Fed. R. App. P. 32(f) ....................................................................... 35

---

\* Authorities upon which we chiefly rely are marked with asterisks.

## GLOSSARY OF ABBREVIATIONS

| | |
|---|---|
| **FEC** | Federal Election Commission |
| **FECA** | Federal Election Campaign Act |
| **MUR** | Matter Under Review |
| **PAC** | Political Action Committee |

## STATEMENT OF JURISDICTION

Plaintiff-Appellant End Citizens United PAC ("End Citizens United") filed suit against Defendant-Appellee the Federal Election Commission ("FEC" or "Commission") in the U.S. District Court for the District of Columbia under 28 U.S.C. § 1331 and 52 U.S.C. § 30109(a)(8)(A). In accordance with this Court's decision in *Oryszak v. Sullivan*, 576 F.3d 522, 524 (D.C. Cir. 2009), the district court determined that the Commission's exercise of prosecutorial discretion to dismiss End Citizens United's first administrative complaint against New Republican PAC divested the court of subject-matter jurisdiction over a challenge to that decision. *See* JA107–108 (citing *Citizens for Responsibility & Ethics v. FEC*, 993 F.3d 880, 889 (D.C. Cir. 2021) ("*New Models*")[1], *reh'g denied*, 55 F.4th 918, 919 (D.C. Cir. 2022) (en banc) ("*New Models II*")).

End Citizens United filed this appeal on October 17, 2022, within sixty days of the district court's Memorandum Opinion and Order entered September 16, 2022, which disposed of all of End Citizens United's claims in this action. Accordingly, this Court has jurisdiction under 28 U.S.C. § 1291 and 52 U.S.C. § 30109(a)(9).

---

[1] For ease of reference, this brief adopts the same case-naming convention adopted by End Citizens United in its Initial Brief. *See* Initial Br. at 21 n.1.

1

## STATEMENT OF THE ISSUES

1.    A FEC decision to dismiss an administrative complaint based even in part on prosecutorial discretion is not reviewable because, among other things, there are no judicially manageable standards for a court to assess whether such discretionary action is appropriate. *New Models*, 993 F.3d at 882. In exercising its discretion here, the Controlling Commissioners relied on, among other things, resource constraints, an expiring statute of limitations, and the "thin evidentiary reed" End Citizens United offered in support of its allegations. Did the district court correctly determine that the Controlling Commissioners' exercise of discretion was not reviewable?

2.    When reviewing the FEC's dismissal of a complaint, the Court asks whether the Commission's decision was "sufficiently reasonable to be accepted." *Campaign Legal Ctr. & Democracy 21 v. FEC*, 952 F.3d 352, 357 (D.C. Cir. 2020) (per curiam) (quoting *FEC v. Democratic Senatorial Campaign Comm.*, 454 U.S. 27, 39 (1981)). The Controlling Commissioners dismissed End Citizens United's coordination claim because the total evidence End Citizens United produced was (1) Governor Rick Scott once chaired New Republican and (2) New Republican ran television advertisements supporting Governor Scott's Senate run months after Governor Scott parted ways with New Republican. Was their analysis reasonable?

## CONSTITUTIONAL, STATUTORY, AND REGULATORY PROVISIONS

Pertinent constitutional, statutory, and regulatory provisions are reproduced in the Addendum bound with this brief and in the Addendum to Appellant's Brief.

## STATEMENT OF THE CASE & FACTS

### I.    IN THE 1970S, CONGRESS ENACTED FECA AND CREATED THE FEC.

In 1971, Congress replaced its piecemeal approach to federal campaign-finance regulation with a unified and comprehensive package—the Federal Election Campaign Act ("FECA," or "the Act"). 52 U.S.C. §§ 30101 *et seq*. Among many other things, the Act established certain candidate-reporting requirements and set federal campaign-finance constraints.

As relevant here, once a person becomes a "candidate" for federal office, the Act requires that individual to file a Statement of Candidacy designating a principal campaign committee within fifteen days. 52 U.S.C. § 30102(e)(1); 11 C.F.R. § 101.1(a). The campaign committee must then submit a Statement of Organization within ten days. 52 U.S.C. § 30103(a). Typically, a person becomes a candidate upon accepting or spending more than $5,000 to influence a federal election, 52 U.S.C. § 30101(2), unless those funds are spent to "test[] the waters"—*i.e.*, "solely for the purpose of determining whether an individual should become a candidate." 11 C.F.R. § 100.72. A federal candidate is subject to contribution limits and source limitations ("Hard Money" restrictions), and candidates are limited or prohibited in

3

their ability to coordinate with other entities, including Super PACs—which are not subject to contribution limits and independently spend money to influence federal elections. Candidate coordination with a Super PAC results in a "Soft Money" contribution violation.

The Watergate Scandal ensued shortly after Congress finalized the 1971 Act. In response, Congress amended it in 1974. *See* Federal Election Campaign Amendments Act of 1974, Pub. L. 93-443, § 301, 88 Stat. 1263, 1289 (1974), *as codified*, 52 U.S.C. § 30143(a). Among other changes, the 1974 iteration of the Act created the FEC, an independent regulatory agency, to fill the enforcement gap left when Congress enacted FECA in 1971.

 "Congress vested enforcement power in the FEC" and "carefully establish[ed] rules that tend to preclude coercive Commission action in a partisan situation." *In re Sealed Case*, 223 F.3d 775, 780 (D.C. Cir. 2000). For example, six Commissioners comprise the FEC, and "[n]o more than 3 members of the Commission . . . may be affiliated with the same political party." 52 U.S.C. § 30106(a)(1). "All decisions of the Commission with respect to the exercise of its duties and powers" must "be made by a majority vote of the members of the Commission," and "the affirmative vote of 4 members of the Commission shall be required in order for the Commission" to:

1.    Start, defend, or appeal any civil action;

4

2.      Render an advisory opinion;

3.      Develop prescribed forms and make, amend, and repeal regulations; and

4.      Conduct investigations and hearings quickly and report apparent violations to law enforcement authorities.

*Id*. §§ 30106(c); 30107(a)(6)–(9).

Any person can file an administrative complaint with the Commission alleging that the Act has been violated. Upon receiving a complaint, the Agency's General Counsel reviews the complaint and any response submitted by the complaint's target. It may then "recommend to the Commission whether or not [the Commission] should find reason to believe that a respondent has committed or is about to commit a violation of statutes or regulations over which the Commission has jurisdiction." 11 C.F.R. § 111.7(a). "If four of the six Commissioners conclude there is reason to believe a violation was committed, a full FEC investigation commences." *Crossroads Grassroots Pol'y Strategies v. FEC*, 788 F.3d 312, 315 (D.C. Cir. 2015). And if the FEC eventually finds probable cause to believe that a violation occurred, it is empowered to seek remedial action. 52 U.S.C. §§ 30109(a)(4)(A)(i), 30109(a)(6)(A). But "if there are fewer than four votes" at the reason-to-believe (or probable cause) stage, then "the FEC dismisses the administrative complaint." *Crossroads Grassroots Policy Strategies*, 788 F.3d at

5

315. Thus, deadlocked votes result in dismissals, which constitute final agency action. *Pub. Citizen, Inc. v. FEC*, 839 F.3d 1165, 1170 (D.C. Cir. 2016).

Contrary to the way most other agencies operate, FECA's allowance for deadlock dismissals is an intentional feature, not a bug, of the FEC's enforcement regime. This Court has long recognized that "Congress uniquely structured the FEC toward maintaining the status quo," *id.* at 1171, which remains paramount given the chilling effect that partisan FEC enforcement could have on core First Amendment political speech. In other words, The FEC's "voting and membership requirements mean that, unlike other agencies—where deadlocks are rather atypical—FEC will regularly deadlock as part of its *modus operandi*." *Id.*

To facilitate judicial review of deadlock dismissals, the Commissioners who declined to move forward with enforcement (dubbed the "Controlling Commissioners") must prepare a written Statement of Reasons. *FEC v. National Republican Senatorial Comm.*, 966 F.2d 1471, 1476 (D.C. Cir. 1992). The party that filed the administrative complaint may challenge the FEC's dismissal in federal court, but the court's review is sharply curtailed. Specifically, "[a] court may not disturb a Commission decision to dismiss a complaint unless the dismissal was based on an 'impermissible interpretation of the Act . . . or was arbitrary or capricious, or an abuse of discretion.'" *Common Cause v. FEC*, 108 F.3d 413, 415 (D.C. Cir. 1997) (quoting *Orloski v. FEC*, 795 F.2d 156, 161 (D.C. Cir. 1986)).

## II.    BASED ON LITTLE MORE THAN RANK CONJECTURE, END CITIZENS UNITED BRINGS TWO FEC COMPLAINTS AGAINST NEW REPUBLICAN PAC AND SENATOR RICK SCOTT.

In April 2018, End Citizens United (the Plaintiff below and the Appellant here) filed two administrative complaints with the FEC against then-Senatorial Candidate Rick Scott and New Republican PAC, a Super PAC that Scott chaired for a stretch before he became a candidate for federal office. JA118–22. End Citizens United first alleged that, because of his previous role as New Republican's chair, then-Governor Scott actually became a candidate for United States Senate months before he officially announced his challenge to incumbent Bill Nelson on April 9, 2018. JA118–19. Based almost entirely on "media reports," whisperings of "political strategists," and objections to Governor Scott's fundraising before he announced his candidacy, Initial Br. at 12, End Citizens United surmised that, if Governor Scott became a candidate before he said he did, then he must not have filed the FEC-required paperwork on time. The FEC designated this complaint Matter Under Review ("MUR") No. 7370. JA118.

Several months later, End Citizens United filed a second administrative complaint against Governor Scott and New Republican. JA175–82. In it, End Citizens United conjured up an allegation that two television advertisements released by New Republican in May and June 2018 (nearly a half-year after Governor Scott left New Republican and after his April 9, 2018 Senate-race announcement) were

7

"created, produced, or distributed at the request or suggestion of candidate Rick Scott." JA181. The FEC designated this complaint MUR No. 7496.

In response, New Republican submitted an affidavit signed by Blaise Hazelwood, who became New Republican's Executive Director on February 1, 2018. JA188. Ms. Hazelwood averred that:

- "Since becoming the Executive Director of New Republican PAC on February 1, 2018, [she had] made all decisions regarding New Republican PAC's operations and activities."

- "As Executive Director of New Republican PAC, [she] made the decision to contract with each of New Republican PAC's current vendors and consultants."

- She had "not spoken with, or otherwise communicated with, Governor Rick Scott about any matters pertaining to the plans, activities, or strategies of New Republican PAC."

- She "never discussed with Governor Rick Scott his decision to become a candidate for the U.S. Senate and . . . had no involvement in his decision-making process."

- "The only individuals with whom [she had] spoken with, or otherwise communicated about, New Republican PAC's operations, activities, plans, and strategies are the PAC's contracted personnel, consultants, and counsel."

JA188. As for the two television advertisements, Ms. Hazelwood swore that "[b]oth independent expenditures . . . were created, produced, and distributed under [her] direction," and "[n]either Governor Scott, nor any representative or agent of Governor Scott's campaign committee, was . . . involved in any way with the creation, production, or distribution of either independent expenditure." JA188.

The complaint filed by End Citizens United included no information or evidence that would cast doubt on Ms. Hazelwood's sworn statement.

### III. THE COMMISSIONERS' DEADLOCK AT THE REASON-TO-BELIEVE STAGE RESULTED IN DISMISSAL OF BOTH END CITIZENS UNITED'S ADMINISTRATIVE COMPLAINTS.

Upon review, the Commission's General Counsel recommended that the Commissioners find reason to believe "that New Republican violated the Act by raising and spending so-called 'soft money.'" and that "Senator Scott failed to timely file a statement of candidacy and a statement of organization for his attendant authorized committee." JA281. In its (incorrect) view, "the available information support[ed] a reasonable inference that . . . Scott became a candidate much earlier than the date of his official announcement" and that "Scott did not step down from New Republican in December 2017, . . . but continued his involvement with New Republican well into 2018." JA210. At the same time, the General Counsel found "there is no information available suggesting that Scott was specifically involved in or requested the production of the May 3 or June 11 advertisements" and thus recommended that the Commission take no action on End Citizens United's coordination claim. JA210.

Upon considering the General Counsel's recommendations, the Commission divided three-to-three, which resulted in dismissal of both MURs. In compliance with this Court's instruction, the three Controlling Commissioners filed a Statement

of Reasons explaining why "neither the wise use of Commission resources nor the available evidence supported" the "sweeping approach" suggested by the General Counsel. JA282.[2] The Controlling Commissioners found "no reason to believe that New Republican violated the soft money rules and dismissed the allegations that Scott untimely filed his candidacy and organization paperwork under *Heckler v. Chaney*," JA282, the Supreme Court case holding "that an agency's decision not to prosecute or enforce, whether through civil or criminal process, is a decision generally committed to an agency's absolute discretion" and thus "general[ly] unsuitab[le] for judicial review," 470 U.S. 821, 831 (1985).

After recounting the allegations brought by End Citizens United and examining the General Counsel's recommendations, the Controlling Commissioners resolved, "[u]ltimately, . . . that this Matter merited the invocation of our prosecutorial discretion." JA290. Because "[t]he only significant evidence of Scott's potential earlier candidacy was predicated on the fundraising and operational activities that occurred during his seven-month term as Chair," the Controlling Commissioners reasoned that "prob[ing] his subjective intent during this period would have necessitated a wide-ranging, costly, and invasive investigation into both

---

[2] Two of the three Commissioners who voted in favor of proceeding also violated a Statement of Reasons. Unlike the Statement filed by the Controlling Commissioners, this separate Statement has no legal effect whatsoever.

Scott and New Republican's activities during that period of time, and possibly after."
JA290.

The Controlling Commissioners declined to approve the General Counsel's proposed invasive inquiry given that the "sole purpose" of its "enforcement docket" is "the regulation of core constitutionally protected activity—'the behavior of individuals and groups only insofar as they act, speak[,] and associate for political purposes.'" JA290. In light of the Commission's "substantial backlog of cases," an "expir[ing] . . . statute of limitations," and the "thin evidentiary reed" offered by End Citizens United, the Controlling Commissioners chose to "invoke[] [the Agency's] prosecutorial discretion pursuant to *Heckler v. Chaney*." JA 290. It also dismissed End Citizens United's coordination complaint "for lack of evidence." JA291.

## IV. END CITIZENS UNITED TRIES, BUT FAILS, TO CONVINCE THE DISTRICT COURT THAT THE FEC'S DISMISSAL WAS CONTRARY TO LAW.

On August 9, 2021, End Citizens United sued the Commission in the United States District Court for the District of Columbia. JA6–25. Its one-count Complaint argued that its allegations against New Republican and Senator Scott established reason to believe that campaign-finance violations had arisen, and that the Commission had acted contrary to law in declining to advance its administrative complaints past the reason-to-believe stage. JA24–25. The district court was not

persuaded, concluding instead that New Republican[3] was "entitled to summary judgment because the FEC's dismissal of [End Citizens United's] first complaint was an unreviewable exercise of prosecutorial discretion and its dismissal of [End Citizens United's] second complaint was reasonable. JA97–98.

As for End Citizen United's first administrative complaint, the district court concluded that "the FEC's decision to invoke its prosecutorial discretion in declining to investigate those claims is an absolute bar to this Court granting [End Citizens United] the relief it seeks." JA106–108. The district court also considered and rejected End Citizens United's numerous arguments made "in an effort to avoid the inexorable logic" of this Circuit's precedents affirming the non-reviewability of administrative dismissals based on prosecutorial discretion. *See* JA109–10 (rejecting End Citizens United's arguments that the Commission's legal reasoning was erroneous and its offered rationale was pretextual and noting numerous factors considered by the Agency in exercising its prosecutorial discretion including, among other things, the "substantial backlog of cases," and limited agency resources).

---

[3] The Commission lacked the four votes necessary to defend against End Citizens United's allegations, but the district court granted New Republican's motion to intervene as a matter of right as a defendant. *See* ECF No. 9; JA97; *see also Crossroads Grassroots Policy Strategies*, 788 F.3d at 321 (holding that nonprofit corporation was entitled to intervention as a matter of right as a defendant where administrative complainant had sued the FEC over dismissal of the administrative complaint).

In resolving End Citizens United's second administrative complaint, the district court noted, first, that it only had prerogative to disturb an FEC dismissal that "is 'contrary to law.'" JA110 (citing 52 U.S.C. § 30109(a)(8)(C)). It also observed that "[a]n FEC decision is 'contrary to law'" only "if (1) the FEC dismissed the complaint as a result of an impermissible interpretation of the Act . . . , or (2) if the FEC's dismissal of the complaint, under a permissible interpretation of the statute, was arbitrary or capricious, or an abuse of discretion," JA110 (quoting *Orloski*, 795 F.2d at 161). After noting that New Republican's Executive Director submitted an affidavit "flatly denying any communication or coordination" between New Republican and "the Scott Campaign," the district court faulted End Citizens United for "identifying no reason why the FEC should have discounted [the Executive Director's] sworn testimony in favor of" the conjectural allegations of third parties. JA111. At bottom, the district court had "little difficulty in determining the Commission acted reasonably in relying on the [Executive Director's] affidavit, adopting [the FEC General Counsel's] interpretation as to the weight of the evidence," JA112, reiterating that "[t]he FEC's dismissal of the coordinated communication allegations . . . was predicated on the lack of evidence identified by" End Citizens United. JA112.

This appeal followed.

## SUMMARY OF THE ARGUMENT

Disposition of this appeal boils down to two basic legal propositions. Summary judgment by the lower court was appropriate because (1) the Controlling Commissioners' invocation of prosecutorial discretion when dismissing MUR 7370 is unreviewable; and (2) the Controlling Commissioners' dismissal of MUR 7496 was not arbitrary, capricious, or an abuse of discretion. The district court should be affirmed.

This Court has established with unmistakable clarity that "a Commission decision based *even in part* on prosecutorial discretion is *not reviewable*." *New Models*, 993 F.3d at 882 (citing *Citizens for Responsibility & Ethics v. FEC*, 892 F.3d 434, 436 (D.C. Cir. 2018) (emphasis added) ("*Commission on Hope*"), *reh'g denied*, 55 F.4th at 919); *see also Heckler*, 470 U.S. at 831). "The law of this circuit 'rejects the notion of carving reviewable legal rulings out from the middle of non-reviewable actions.'" *Chaney*, 470 U.S. at 442. The Commission's exercise of prosecutorial discretion removes it from the realm of judicial review, ending the inquiry there.

Here, End Citizens United (1) argues that "unreviewable" does not mean unreviewable when the Controlling Commissioners reference their legal analysis as a factor in informing the Commission's exercise of prosecutorial discretion; and (2) asks the Court to disregard its clear precedent and review the FEC's discretionary

nonenforcement decision to invoke prosecutorial discretion. Yet as much as End Citizens United wishes it were otherwise, unreviewable really does mean unreviewable—full stop. This Court need not revisit tired arguments it has heard and resolved several times.

Second, the district court correctly upheld the Commission's decision to dismiss MUR 7496 under the "contrary to law" standard. This inquiry asks only "whether the Commission's decision was 'sufficiently reasonable to be accepted.'" *Campaign Legal Ctr. & Democracy 21*, 952 F.3d at 357 (D.C. Cir. 2020) (quoting *Democratic Senatorial Campaign Comm.*, 454 U.S. at 39).

Applying this deferential standard, the district court correctly determined that the Commission reasonably (1) relied on the affidavit of New Republican's Executive Director (2) adopted the FEC General Counsel's interpretation as to the weight of the evidence. JA112. It thus concluded that "[t]he FEC's dismissal of the coordinated communication allegations . . . was predicated on the lack of evidence identified by" End Citizens United. JA112. Notwithstanding End Citizens United's efforts to re-litigate the merits and nit-pick the Controlling Commissioners' analysis on appeal, its arguments fall far short of showing the Controlling Commissioners' decision was not "sufficiently reasonable" to be accepted. *See id.* The district court's grant of summary judgment for New Republican was appropriate, and this Court should affirm it.

## STANDARD OF REVIEW

This Court reviews the district court's grant of summary judgment de novo. *New Models*, 993 F.3d at 884, *reh'g denied*, *New Models II*, 55 F.4th at 919. As noted above, *see supra* at 6, and as discussed below, *see infra* at 28, federal court review of an FEC dismissal is strictly confined to assessing whether the Commission (1) misinterpreted the Act or (2) acted arbitrarily, capriciously, or abused its discretion. 52 U.S.C. § 30109(a)(8)(C)).

## ARGUMENT

**I.     BECAUSE THE COMMISSION EXERCISED ITS PROSECUTORIAL DISCRETION WHEN DISMISSING END CITIZENS UNITED'S FIRST ADMINISTRATIVE COMPLAINT, IT CANNOT BE REVIEWED BY A FEDERAL COURT.**

This Court has held unambiguously that "a Commission decision based *even in part* on prosecutorial discretion is *not reviewable*." *New Models*, 993 F.3d at 882 (citing *Commission on Hope*, 892 F.3d at 436; *Chaney*, 470 U.S. 821) (emphasis added). Here, the Controlling Commissioners explicitly pronounced that, "[u]ltimately, . . . this Matter merited the invocation of our prosecutorial discretion." JA290. Applying the Circuit's unequivocal law to the Controlling Commissioners' indisputable exercise of discretion shows that the district court's dismissal was correct.

16

**A.    End Citizens United's proposed end run around this Court's precedent has no sound basis in law, fact, or logic.**

Undeterred by this Court's increasingly explicit pronouncements that it will not review the FEC's discretionary nonenforcement decisions, End Citizens United insists that "unreviewable" does not actually mean unreviewable if the Controlling Commissioners "reference[] their interpretation of FECA as a basis for exercising prosecutorial discretion." Initial Br. 27.[4] In so arguing, End Citizens United secures the rare trifecta of being wrong on the law, on the facts, and on suggesting any semblance of a workable rule. We discuss each.

**1.**  As a matter of law, at no point has this Court (or any court, for that matter) suggested that if an agency includes a legal assessment as one of many factors informing its prosecutorial discretion, its decision to exercise that discretion transmogrifies into one that a federal court can review. Rather, this Court has stated the opposite. In *Commission on Hope*, the Court noted only that "there may be . . . review under FECA if . . . the agency's action was based *entirely* on its interpretation of the statute"—*i.e.*, if the Commission *did not* exercise its

---

[4] End Citizens United takes issue with the district court's conclusion that the Commission's exercise of prosecutorial discretion divested the court of subject-matter jurisdiction. Initial Br. 24–26. As New Republican pointed out to the district court, this Circuit couches non-reviewability both as jurisdictional, *see Oryszak*, 576 F.3d at 524, and as not, *see People for the Ethical Treatment of Animals v. U.S. Dep't of Agric.*, 797 F.3d 1087, 1097–98 (D.C. Cir. 2015). Either way, non-reviewable means non-reviewable, which means that the court below correctly dismissed End Citizens United's challenge under *Commission on Hope* and *New Models*.

prosecutorial discretion *at all*. 892 F.3d at 441 n.11 (emphasis added). *Commission on Hope* emphasized that "[t]he law of this circuit 'rejects the notion of carving reviewable legal rulings out from the middle of non-reviewable actions.'" *Id*. at 442 (quoting *Crowley Caribbean Transport, Inc. v. Pena*, 37 F.3d 671, 676 (D.C. Cir. 1994), and citing *Ass'n of Civilian Technicians, Inc. v. Federal Lab. Relations Auth.*, 283 F.3d 339, 343–44 (D.C. Cir. 2002)).

New Models picked up where *Commission on Hope* left off. There, the Court affirmed a district court dismissal holding that "the Commission's 'legal analyses are reviewable only if they are the *sole reason* for the dismissal of an administrative complaint.'" 993 F.3d at 883 (quoting *Citizens for Responsibility & Ethics in Wash. v. FEC*, 380 F. Supp. 3d 30, 43 (D.D.C. 2019) (emphasis original)). The *New Models* Court reiterated repeatedly[5] that "a Commission nonenforcement decision is reviewable only if the decision rests *solely* on legal interpretation." *Id.* at 884 (citing *Commission on Hope*, 892 F.3d. at 441–42).

Lest there be any doubt, in *New Models*, this Court specifically noted that the Controlling Commissioners' Statement of Reasons "provided legal reasons—even

---

[5] *See also New Models*, 993 F.3d at 885 ("[I]f the Commission declines an enforcement action 'based *entirely* on its interpretation of the statute' such decision might be reviewable. . . . When a Commission decision rests even in part on prosecutorial discretion, however, we cannot review it under the 'contrary to law' standard." (quoting *Commission on Hope*, 892 F.3d at 440, 441 n.11) (emphasis original)).

lengthy ones" along with its exercise of prosecutorial discretion in that case. *Id.* at 885–86. There, the Commission dedicated most of its thirty-two-page Statement of Reasons to explaining why New Models did not qualify as a "political committee" for FECA's registration and reporting requirements, and it relied on those legal reasons as its basis for declining to move forward past the reason-to-believe stage. *Id*. at 883.[6] Only in the final paragraph of the statement did the controlling Commissioners state that they were also declining to proceed with enforcement in the exercise of their prosecutorial discretion. *Id.* And yet this Court still held that the Commission enjoyed prerogative to "exercise[] its expertise in weighing these factors, factors courts are ill-equipped to review in the absence of identifiable legal standards." *Id*. at 885 (quoting *Chaney*, 470 U.S. at 831–32 ("The agency is far better equipped than the courts to deal with the many variables involved in the proper ordering of its priorities.")).

In so doing, the Court placed beyond dispute that "the Commission's legal analysis . . . is not reviewable because it is joined with an explicit exercise of prosecutorial discretion." *Id.* at 886. That such legal analysis "standing alone may be amenable to judicial review" does not transform a non-reviewable decision into

---

[6] *See also New Models*, 993 F.3d at 885 (quoting *Chaney*, 470 U.S. at 831-32, for the proposition that any agency exercise of prosecutorial discretion requires *some* legal analysis, like "whether a violation has occurred" and "whether the agency is likely to succeed if it acts").

a reviewable decision. *Id.* "[A]s the Supreme Court has repeatedly admonished, courts cannot simply pluck out legal questions from nonreviewable decisions." *New Models II*, 55 F.4th at 919 (Rao, J., concurring) (citing *ICC v. Bhd. of Locomotive Eng'rs*, 482 U.S. 270, 283 (1987); *Ass'n of Civilian Technicians, Inc.*, 283 F.3d at 343.

In other words, the Court has rejected outright—twice within the last two years, and thrice if the *New Models II* en banc denial is counted—End Citizens United's argument that an FEC deadlock dismissal is judicially reviewable "where [Controlling] Commissioners 'referenced their merits analysis as a ground for exercising prosecutorial discretion.'" Initial Br. 28. This alone warrants affirmance for New Republican.

**2.** As a matter of record fact, the Commission's exercise of prosecutorial discretion was *not* "directly premised" on its interpretation of the Act. Initial Br. at 32. End Citizens United insists that, "unlike in *New Models*, the controlling Commissioners" in this case "rested their purported invocation of prosecutorial discretion on a legal conclusion about FECA: that determining when Scott became a candidate would require 'prob[ing] his subjective intent.'" Initial Br. at 29 (quoting JA290). Though its argument is not a model of clarity, End Citizens United's position seems to be that the Commission would have advanced past the reason-to-believe stage had it believed it unnecessary to probe Senator Scott's "subjective

intent," meaning the district court had a reviewable standard by which it could assess whether the Commission's action was contrary to law.

Read in context, however, the Commission's (legally correct[7]) passing reference to Senator Scott's subjective intent cannot, with a straight face, be seen as the determinative factor in its decision to dismiss End Citizens United's complaint. As the district court noted, "the inherent difficulty of assessing Scott's subjective intent was only one of multiple factors the controlling Commissioners cited in exercising their prosecutorial discretion, alongside limited agency resources and a 'substantial backlog of cases.'" JA109. Nor can it support an argument that this

---

[7] Although the Court need not resolve the subjective-versus-objective distraction that End Citizens United tries to inject into this case, it bears mentioning that when examining "testing the waters" allegations, such as those at issue in the underlying administrative complaint, the relevant regulation turns on the question of whether "an individual has decided to become a candidate." 11 C.F.R. § 100.72(b). While the FEC's testing-the-waters regulation has been expressed in a variety of ways, the FEC typically examines objective factors but only for the purpose of discerning the individual's subjective intent. For example, in MUR 5934, the Commissioners explained, "[b]ecause we do not believe Senator Thompson's public statements establish that he had definitively decided to become a federal candidate before he filed his Statement of Candidacy . . . we voted against finding reason to believe that a violation occurred." MUR 5934 (Thompson), Statement of Reasons of Vice Chairman Matthew S. Petersen and Commissioners Caroline C. Hunter, Donald F. McGahn, and Ellen L. Weintraub at 1. The FEC's inquiry focused on Senator Thompson's own statements about whether he was a candidate or not, and specifically noted "the contrast between Senator Thompson's ambiguous phrasings and Reverend Sharpton's unambiguous statements" in MUR 5363 (Sharpton); *see also* FEC Advisory Op. 2015-09 (Nov. 13, 2015) (explaining that a person does not become a candidate for federal office until and unless he or she "makes a private determination that he or she will run for federal office").

offhand comment renders reviewable the Commission's exercise of its unreviewable

prosecutorial discretion. Across the board, End Citizens United is mistaken.

The reasons the Commission exercised its discretion were well developed and

multifaceted. In "determin[ing] that this Matter merited the invocation of [its]

prosecutorial discretion," the FEC referenced:

- The lack of evidence offered by End Citizens United ("The only significant evidence of Scott's potential earlier candidacy was predicated on the fundraising and operational activities that occurred during his seven-month term as Chair");

- The costs and resource-drain associated with investigating End Citizens United's allegations ("To probe his subjective intent during this period would have necessitated a wide-ranging, costly, and invasive investigation into both Scott and New Republican's activities during that period of time, and possibly after");

- The First Amendment implications of investigating Senator Scott and New Republican ("As the Commission is the only agency whose enforcement docket 'has as its sole purpose the regulation of core constitutionally protected activity—"the behavior of individuals and groups only insofar as they act, speak[,] and associate for political purposes'"—this was not an action we could take lightly");

- The Commission's backlogged caseload ("[W]e would have been authorizing an expensive and resource consuming investigation while the Commission is still working through a substantial backlog of cases that accumulated while it lacked a quorum");

- The Statute of Limitations, which was running out ("[T]he Commission is obligated to make difficult decisions about whether or not to enforce against Respondents in Matters nearing the expiration of the statute of limitations");

22

- The lack of any actual evidence that either New Republican or Senator Scott had violated the Act ("[W]e were unable to justify the commitment of the Commission's scarce enforcement resources to such a lengthy and cumbersome investigation on the basis of such a thin evidentiary reed").

JA290. In other words, the Commission weighed at least five "prudential and discretionary considerations relating to resource allocation and the likelihood of successful enforcement." *New Models*, 993 F.3d at 886. There is no standard at all that would let a court second guess the way the Commission balanced these factors. Nor would any standard exist had the Commission referenced the difficulty in pinning down Senator Scott's intent as an objective, rather than a subjective, matter.

In other words, tinkering with the Commission's offhand reference to Senator Scott's "subjective intent" would change nothing. And if the Court were to "rule on the Commission's" remark while "leaving its discretionary reasons undisturbed, [it] would risk exceeding [its] Article III power by issuing an advisory opinion." *New Models*, 993 F.3d at 889. The Commission understands the costs associated with undertaking the sort of investigation End Citizens United requested, and the Commission is best situated to weigh those costs against its backlogged caseload, the flimsiness of End Citizens United's evidentiary showing, and potential infringement of New Republican's and Senator Scott's core First Amendment activity. Affirmance is thus warranted.

**3.** Finally, as a matter of practicality, the rule suggested by End Citizens United is hopelessly unworkable. There are legion reasons executive-branch prosecutorial-discretion decisions are not reviewable.[8] Relevant here is that there is "no legal criteria a court could use to review an exercise of prosecutorial discretion under" the Act's "contrary to law" standard. *New Models*, 993 F.3d at 885 (citing *Commission on Hope*, 892 F.3d at 439). The rule offered by End Citizens United— *i.e.*, prosecutorial-discretion decisions become reviewable any time the FEC "reference[s] [its] merits analysis as a ground for exercising prosecutorial discretion," Initial Br. at 28—does not solve this problem.[9] Judicial second-guessing

---

[8] "The general principle that an agency's exercise of enforcement discretion is unreviewable follows from 'tradition, case law, and sound reasoning,' as well as protection for a core executive power." *New Models*, 993 F.3d at 887. "The Constitution entrusts the Executive with [the] duty to take care that the laws be faithfully executed. U.S. Const. art. II, § 3. The decision whether to bring an action on behalf of the United States is therefore a decision generally committed to [the government's] absolute discretion for the reasons spelled out in *Heckler v. Chaney*." *Id.* at 888 (quoting *Chaney*, 470 U.S. at 831 (internal quotation marks omitted)). Allowing the courts to generally police agency enforcement decisions, whether the decisions are based on law or discretion, would turn the Court's "precedents on their head." *See id.* The Court cannot review this exercise of enforcement discretion without risking that it will be "exceeding its Article III power by issuing an advisory opinion." *See id.* at 889.

[9] And, as noted above, has already been rejected by this Court. *See supra* at 17–20; *see also New Models*, 993 F.3d at 885–86).

one of several factors that may (or may not) affect an FEC enforcement decision would undermine the FEC's authority to exercise enforcement discretion.

The only workable rule is the one that End Citizens United (and earlier litigants) will not accept—"there may be . . . review under FECA if . . . the agency's action was based *entirely* on its interpretation of the statute." *Commission on Hope*, 892 F.3d at 441 n.11 (emphasis added). And what follows naturally is that "a Commission decision based *even in part* on prosecutorial discretion is not reviewable." *New Models*, 993 F.3d at 882 (citing *Commission on Hope*, 892 F.3d at 436 (emphasis added).

\*     \*     \*

This Court has twice resolved the question posed by End Citizens United. Because the rule End Citizens United advances is (1) foreclosed by Circuit precedent, (2) wholly divorced from the facts here, and (3) utterly impracticable, the Court should affirm the district court's grant of summary judgment for New Republican.

**B.    *New Models* and *Commission on Hope* were correctly decided.**

Perhaps aware that its main argument is foreclosed by Circuit precedent, End Citizens United (along with its Amicus Curiae) suggest that the Court decline to follow it. In its view, *Commission on Hope* and *New Models* "rest on a premise contradicted by FECA and governing precedent: that FEC dismissal decisions are

'control[led]' by *Heckler* and its 'presumption' that 'an agency's decision not to undertake enforcement' is unreviewable." Initial Br. at 33–34 (quoting *Comm'n on Hope*, 892 F.3d at 439). As this Court has thrice made plain, however, End Citizens United is mistaken.

In support of its argument, End Citizens United desperately clings to an isolated sentence from the Supreme Court's decision in *FEC v. Akins*. 524 U.S. 11 (1998). *Akins*, however, had nothing to do with prosecutorial discretion. Instead, the question in *Akins* was whether a group of individuals "had *standing* to challenge the [FEC]'s decision not to bring an enforcement action in this case." *Id*. at 18 (emphasis added). Standing, of course, is a jurisdictional doctrine, and as End Citizens United has argued throughout this appeal, "under FECA, 'reviewability is not a jurisdictional issue.'" Initial Br. at 24 (quoting *Democracy 21*, 952 F.3d at 355, and citing *People for the Ethical Treatment of Animals*, 797 F.3d at 1097–98 (D.C. Cir. 2015)). In other words, the *Akins* Court did not need to address the issue presented by this case—*i.e.*, even if a party has Article III standing and even if a court has subject-matter jurisdiction, is an FEC discretionary decision not to advance an administrative complaint reviewable?

This Court has recognized the same. In *New Models*, it noted that "a party may have standing to challenge some Commission nonenforcement decisions," but clarified that "does not mean that courts may review all Commission

nonenforcement decisions." *New Models*, 993 F.3d at 893. "[E]ven when a party has standing to challenge an action, judicial review may be separately barred if the agency's decision is 'committed to agency discretion by law.'" *Id*. (quoting 5 U.S.C. § 701(a)(2), and citing *Sierra Club & Valley Watch, Inc. v. Jackson*, 648 F.3d 848, 856–57 (D.C. Cir. 2011)). Because "the Commission did not invoke enforcement discretion as a basis for dismissal" in *Akins*, the Supreme Court answered the standing question but left open the reviewability question. *Id*. at 893. "Indeed, the *Akins* Court expressly acknowledged the possibility that 'even had the FEC agreed with respondents' view of the law, it [may] still have decided *in the exercise of its discretion* not to' proceed with enforcement." *Id.* (quoting *Akins*, 524 U.S. at 25 (emphasis in *New Models*).[10]

This Court has settled this question. Nothing in *Akins* contradicts either *Commission on Hope* or *New Models*. And nothing End Citizens United has offered can change that.

---

[10] *See also Commission on Hope*, 892 F.3d at 438 n.6 ("The only issue the Court decided in *Akins* dealt with standing. The Federal Election Commission issued an interpretation of § 431(4)(A) of FECA to dismiss one of two charges in a complaint. (The Commission, relying on *Heckler v. Chaney*, invoked prosecutorial discretion to dismiss the other charge, which alleged a violation of § 441b of FECA; this Commission action was not at issue in the Supreme Court. *See* 524 U.S. at 25; *Akins v. FEC*, 736 F. Supp. 2d 9, 13–15 (D.D.C. 2010)). The Court held only that the complainants had standing even though, on remand, the Commission might invoke its prosecutorial discretion to dismiss the remaining charge, as it had done with respect to the § 441b allegation. 524 U.S. at 25.").

## II.   THE DISTRICT COURT'S DEFERENCE TO THE COMMISSION'S DISMISSAL OF MUR 7496 WAS PLAINLY CORRECT.[11]

Having exhausted every conceivable (yet ultimately doomed) argument that the Court should abandon its own precedents and second guess the FEC's exercise of prosecutorial discretion, End Citizens United shifts focus and asks the Court to reverse the district court's rejection of its coordination challenge. End Citizens United's arguments on this score, however, fare no better.

Although the Court reviews de novo the *district court's* grant of summary judgment, it owes considerable deference to *the FEC's* dismissal of End Citizens United's coordination claim. Unless End Citizens United can show either "(1) the FEC dismissed the complaint as a result of an impermissible interpretation of the Act, or (2) . . . the FEC's dismissal of the complaint, under a permissible interpretation of the statute, was arbitrary or capricious, or an abuse of discretion," the Court should affirm. *Democracy 21*, 952 F.3d at 357 (quoting *Orloski*, 795 F.2d at 161). In other words, the Court asks only "whether the Commission's decision was 'sufficiently reasonable to be accepted.'" *Id.* (quoting *Democratic Senatorial Campaign Comm.*, 454 U.S. at 39 (1981)).

---

[11] The district court chose not to, but could have, granted summary judgment to New Republican PAC entirely based on the Commission's invocation of prosecutorial discretion in the Statement of Reasons, *see infra.* at 32.

Given the nearly twenty-pages that End Citizens United spends nit-picking the minutiae of both the district court and the Controlling Commissioners' orders, some clarification is warranted. End Citizens United's obfuscations notwithstanding, the Controlling Commissioners plainly stated that they "dismissed" the coordination challenge "for lack of evidence." JA290. The sum of End Citizens United's so-called factual support for its coordination challenge is:

> On May 3, 2018, just 24 days after Scott's official announcement of his Senate run, and less than two months after he was still being publicly identified as the PAC's chair, the PAC released a TV advertisement to air the following week that attacked Senator Bill Nelson, Scott's presumptive Democratic opponent, urging voters to "term limit Bill Nelson." On June 11, the PAC launched another TV and social media advertising blitz opposing Nelson, again urging voters to "Term Limit Career Politician Bill Nelson."

JA177. To summarize: according to End Citizens United, Rick Scott chaired New Republican. After he left and became a candidate for federal office, New Republican released two television advertisements supporting his candidacy. That's it. End Citizens United offers only rank and baseless speculation to connect Rick Scott to New Republican's advertisements.[12]

---

[12] *See* JA179–80 ("These advertisements also appear to meet the 'conduct'' prong, because they *may have been* the product of substantial discussions between Scott and the PAC's employees or strategic advisors. . . . In the ten months that Gov. Scott was publicly identified as chairing New Republican PAC, when he was actively considering a run for U.S. Senate, he is *highly likely to* have engaged in 'substantial discussion' about his future campaign's 'plans, projects activities, or needs' with the Super PAC's agents and employees.") (emphases added).

In contrast, New Republican summitted an affidavit signed by Blaise Hazelwood,[13] who became New Republican's Executive Director on February 1, 2018. JA188. As explained above, *supra* at 8, Ms. Hazelwood averred that she made all decisions on behalf of New Republican, that New Republican's activities were conducted independent of Rick Scott and his campaign, and that the only individuals she had spoken with regarding its operations and strategies were New Republican's contracted staff, consultants, and counsel. *Id.*

The Commissioners had this evidentiary contrast before them; they explicitly considered it; and based on the information provided by both sides, the Controlling Commissioners "dismissed" End Citizens United's coordination challenge "for lack of evidence." JA290. In so doing, the Controlling Commissioners did not misconstrue the Act. *Democracy 21*, 952 F.3d at 357 (quoting *Orloski*, 795 F.2d at 161). They did not act arbitrarily or capriciously. Nor did they abuse their discretion. *Id.* Plainly, "the Commission's decision was 'sufficiently reasonable to be accepted.'" *Id.* (quoting *Democratic Senatorial Campaign Comm.*, 454 U.S. at 39).

---

[13] End Citizens United spends no fewer than five pages trying to explain the FEC General Counsel's assessment of Ms. Hazelwood's affidavit, the Controlling Commissioners' assessment of the General Counsel's assessment, and the district court's assessment of the Controlling Commissioners' assessment of the FEC General Counsel's assessment. *See* Initial Br. 44–50. This strange and confusing game of telephone, however, cannot change the fact that (1) the Controlling Commissioners dismissed the coordination claim for lack of evidence, (2) that conclusion was reasonable, and (3) the district court was right to so conclude.

Accordingly, the district court did not err in granting summary judgment for New Republican. Despite End Citizens United's musings about footnotes and what the FEC General Counsel did or did not think, the district court was correct when it reasoned:

> [End Citizens United] argues that the FEC could not reasonably rely on the Hazelwood affidavit as a basis to dismiss its allegations, relying in large part on the fact that Hazelwood only assumed her role at [New Republican] in February 2018 and so was unable to speak to violations alleged to have occurred before that time. . . . But, for the reasons already stated, the only complaint over which this Court has jurisdiction is [End Citizens United's] allegation that [New Republican] impermissibly coordinated with the Scott Campaign in airing television advertisements in May and June 2018. It was reasonable of the FEC to rely on her affidavit to assess those allegations. As such, I have little difficulty in determining the Commission acted reasonably in relying on the Hazelwood affidavit and adopting OGC's interpretation as to the weight of that evidence. "Because the controlling commissioners' reliance on the General Counsel's recommendation and analysis of the relevant statutory provisions was 'sufficiently reasonable to be accepted,' [I] will not disturb their decision." *Campaign Legal Ctr.*, 952 F.3d at 358 (quoting *DSCC*, 454 U.S. at 39).

JA111–12.

Consistent with its previous attempts to conjure reversible error from the ether, End Citizens United insists that the Controlling Commissioners erroneously concluded that its coordination claim required, as a legal matter, success on its filing/soft-money claims. But that's not what the Controlling Commissioners did or said, and suggesting otherwise ignores that they unequivocally "dismissed" the coordination challenge "for lack of evidence." JA290. Placed in context, the better

31

reading of this footnote is that (1) based on its exercise of prosecutorial discretion, the Commission would not investigate Senator Scott's history as New Republican's chair, and (2) without an investigation into that time frame, the paltry evidentiary showing mustered by End Citizens United could not sustain a reason-to-believe finding.

Alternatively, the Controlling Commissioners' dismissal of the coordination claim for "lack of evidence," JA290–91, is a quintessential basis for invoking prosecutorial discretion. *See Akins*, 736 F. Supp. 2d at 23 n.12 ("[T]he Commission acted within its prosecutorial discretion in considering the lack of evidence supporting the plaintiffs' position."). As New Republican PAC argued before the district court, *see, e.g.*, ECF No. 27-1, the Controlling Commissioners' Statement of Reasons leaves ample room for its invocation of prosecutorial discretion to encompass both End Citizens United's complaints, rather than just MUR 7370. If that statement is treated as a single "decision" by the Controlling Commissioners to dismiss the underlying administrative complaints, the entire decision remains unreviewable. *See New Models*, 993 F.3d at 884 ("[A] Commission *decision* that rests *even in part* on prosecutorial discretion cannot be subject to judicial review." (emphasis added)). Under this approach, the Court need not reach the merits of the FEC's dismissal of MUR 7496.

But even if this Court reaches the merits, at bottom, End Citizen United quibbles with statements made either by the Controlling Commissioners or the district court that could have been more precise or less subject to misinterpretation. But immaculate precision is not the standard here. The standard is "whether the Commission's decision was 'sufficiently reasonable to be accepted.'" *Democracy 21*, 952 F.3d at 357 (quoting *Democratic Senatorial Campaign Comm.*, 454 U.S. at 39 (1981)). It was, and, accordingly, this Court should affirm.

## CONCLUSION

For all these reasons, the Court should affirm the district court's grant of summary judgment for New Republican.

Dated: February 24, 2023          Respectfully submitted,

*/s/ Jason B. Torchinsky*
Jason B. Torchinsky
Edward M. Wenger
Phillip M. Gordon
Kenneth C. Daines
Zachary Henson
HOLTZMAN VOGEL BARAN
TORCHINSKY & JOSEFIAK PLLC
2300 N Street NW, Suite 643A
Washington, DC 20037
(202) 737-8808 (phone)
(540) 341-8809 (facsimile)
*jtorchinsky@holtzmanvogel.com*
*emwenger@holtzmanvogel.com*
*pgordon@holtzmanvogel.com*
*kdaines@holtzmanvogel.com*
*zhenson@holtzmanvogel.com*

*Counsel for Intervenor-Appellee*

## CERTIFICATE OF COMPLIANCE

1.     This document complies with the type-volume and word-count limits of Federal Rule of Appellate Procedure 32(a)(7)(B)(i) because, excluding the parts of the document exempted by Federal Rule of Appellate Procedure 32(f) and Circuit Rule 32(e)(1), this document contains 7,775 words.

2.     This document complies with the typeface and type-style requirements of Federal Rules of Appellate Procedure 32(a)(5) and 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

*/s/ Jason B. Torchinsky*
JASON B. TORCHINSKY

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on this 24th day of February, 2023, a true copy of the Answer Brief was filed electronically with the Clerk of Court using the Court's CM/ECF system, which will send by email a notice of docketing activity to the registered Attorney Filer on the attached electronic service list.

*/s/ Jason B. Torchinsky*
JASON B. TORCHINSKY

**ADDENDUM**

# TABLE OF CONTENTS

5 U.S.C. § 701 ................................................................................................ a1

52 U.S.C. § 3016(a)(1) .................................................................................... a1

52 U.S.C § 30143(a) ....................................................................................... a2

11 C.F.R. § 100.72 .......................................................................................... a2

11 C.F.R. § 111.7(a) ....................................................................................... a3

Except for the following, all applicable statutes, etc., are contained in End Citizens United's Initial Brief.

**<u>5 U.S.C. § 701</u>**

**5 U.S. Code § 701 - Application; definitions**

(a)  This chapter applies, according to the provisions thereof, except to the extent that—

    (1)  statutes preclude judicial review; or

    (2)  agency action is committed to agency discretion by law.

(b)  For the purpose of this chapter—

    (1)  "agency" means each authority of the Government of the United States, whether or not it is within or subject to review by another agency, but does not include—

        (A)  the Congress;

        (B)  the courts of the United States;

        (C)  the governments of the territories or possessions of the United States;

        (D)  the government of the District of Columbia;

        (E)  agencies composed of representatives of the parties or of representatives of organizations of the parties to the disputes determined by them;

        (F)  courts martial and military commissions;

        (G)  military authority exercised in the field in time of war or in occupied territory; or

        (H)  functions conferred by sections 1738, 1739, 1743, and 1744 of title 12; subchapter II of chapter 471 of title 49; or sections 1884, 1891–1902, and former section 1641(b)(2), of title 50, appendix; [1] and

    (2)  "person", "rule", "order", "license", "sanction", "relief", and "agency action" have the meanings given them by section 551 of this title.

a1

**52 U.S.C. § 30106(a)(1)**

**Federal Election Commission**

(a)    Establishment; membership; term of office; vacancies; qualifications; compensation; chairman and vice chairman

(1)    There is established a commission to be known as the Federal Election Commission. The Commission is composed of the Secretary of the Senate and the Clerk of the House of Representatives or their designees, ex officio and without the right to vote, and 6 members appointed by the President, by and with the advice and consent of the Senate. No more than 3 members of the Commission appointed under this paragraph may be affiliated with the same political party.

**52 U.S.C. § 30143(a)**

**State laws affected**

(a)    In general. Subject to subsection (b), the provisions of this Act, and of rules prescribed under this Act, supersede and preempt any provision of State law with respect to election to Federal office.

**11 C.F.R. § 100.72**

**Testing the waters**

(a)    General exemption. Funds received solely for the purpose of determining whether an individual should become a candidate are not contributions. Examples of activities permissible under this exemption if they are conducted to determine whether an individual should become a candidate include, but are not limited to, conducting a poll, telephone calls, and travel. Only funds permissible under the Act may be used for such activities. The individual shall keep records of all such funds received. See 11 CFR 101.3. If the individual subsequently becomes a candidate, the funds received are contributions subject to the reporting requirements of the Act. Such contributions must be reported with the first report filed by the principal campaign committee of the candidate, regardless of the date the funds were received.

(b)    Exemption not applicable to individuals who have decided to become candidates. This exemption does not apply to funds received for activities indicating that an individual has decided to become a candidate for a particular

office or for activities relevant to conducting a campaign. Examples of activities that indicate that an individual has decided to become a candidate include, but are not limited to:

>(1) The individual uses general public political advertising to publicize his or her intention to campaign for Federal office.

>(2) The individual raises funds in excess of what could reasonably be expected to be used for exploratory activities or undertakes activities designed to amass campaign funds that would be spent after he or she becomes a candidate.

>(3) The individual makes or authorizes written or oral statements that refer to him or her as a candidate for a particular office.

>(4) The individual conducts activities in close proximity to the election or over a protracted period of time.

>(5) The individual has taken action to qualify for the ballot under State law.

### 11 C.F.R. § 111.7(a)

**General Counsel's recommendation on complaint-generated matters (52 U.S.C. 30109(a)(1).**

Following either the expiration of the fifteen (15) day period specified by 11 CFR 111.6(a) or the receipt of a response as specified by 11 CFR 111.6(a), whichever occurs first, the General Counsel may recommend to the Commission whether or not it should find reason to believe that a respondent has committed or is about to commit a violation of statutes or regulations over which the