ORAL ARGUMENT SCHEDULED FOR APRIL 26, 2023

**No. 22-5277**

**UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT**

END CITIZENS UNITED PAC,
    *Plaintiff-Appellant*,

*v.*

FEDERAL ELECTION COMMISSION,
    *Defendant-Appellee.*

NEW REPUBLICAN PAC,
    *Intervenor-Appellee.*

On Appeal from the United States District Court
for the District of Columbia, No. 1:21-cv-2128-RJL
Before the Honorable Richard J. Leon

**APPELLANT'S REPLY BRIEF**

Adav Noti
Kevin P. Hancock
Alexandra Copper
Allison Walter
CAMPAIGN LEGAL CENTER ACTION
1101 14th St. NW, Suite 400
Washington, DC 20005
(202) 736-2200
khancock@campaignlegalcenter.org

*Counsel for Appellant*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................... iii

GLOSSARY OF ABBREVIATIONS ...................................................... v

SUMMARY OF ARGUMENT ............................................................... 1

ARGUMENT ......................................................................................... 4

I.  New Republican Fails to Rebut End Citizens United's Showing that the District Court Had Subject-Matter Jurisdiction to Review the FEC's Dismissal of MUR 7370 ................................................................ 4

   A.  New Republican Does Not Dispute that Reviewability Under FECA Is Not a Jurisdictional Issue ..................................................... 5

   B.  New Republican Has Failed to Show that the Commission's Dismissal of MUR 7370 Is Not Reviewable ............................... 7

      1. New Republican Overstates the Holdings in *Commission on Hope* and *New Models* ........................................................... 8

      2. New Republican Mischaracterizes the Statement of Reasons, Which Is Reviewable ....................................................... 11

      3. New Republican Has Failed to Show that *Commission on Hope* and *New Models* Are Consistent with Supreme Court and D.C. Circuit Precedent ............................................................ 15

II. New Republican Fails to Rebut End Citizens United's Showing that the FEC's Dismissal of MUR 7496 Was Contrary to Law ................. 18

CONCLUSION ................................................................................... 23

CERTIFICATE OF COMPLIANCE ................................................... 24

CERTIFICATE OF SERVICE ............................................................ 25

## TABLE OF AUTHORITIES

**Cases**                                                                 **Pages**

*Califano v. Sanders*, 430 U.S. 99 (1977) .................................................. 6

*Campaign Legal Center v. FEC*, No. 19-2336 (JEB), --- F. Supp. 3d ----,
  2022 WL 17496220 (D.D.C. Dec. 8, 2022) .................................................. 2, 18

*Campaign Legal Center & Democracy 21 v. FEC*, 952 F.3d 352
  (D.C. Cir. 2020) (per curiam) ("*Democracy 21*") ..................................... 5, 7, 16

*Chamber of Commerce v. FEC*, 69 F.3d 600 (D.C. Cir. 1995) ............................. 16

*Citizens for Responsibility & Ethics in Washington v. FEC*, 892 F.3d 434
  (D.C. Cir. 2018) ("*Commission on Hope*") .............................1, 2, 4, 8-11, 15-17

*Citizens for Responsibility & Ethics in Washington v. FEC*, 923 F.3d 1141
  (D.C. Cir. 2019) ................................................................................ 16

*Citizens for Responsibility & Ethics in Washington v. FEC*, 993 F.3d 880
  (D.C. Cir. 2021) ("*New Models*") ........................................ 1, 2, 4-5, 7-11, 15-17

*Citizens for Responsibility & Ethics in Washington v. FEC*, 55 F.4th 918
  (D.C. Cir. 2022) ............................................................................ 8-9

*Common Cause v. FEC*, 842 F.2d 436 (D.C. Cir. 1988) ................................ 13, 22

*Democratic Congressional Campaign Committee v. FEC*, 831 F.2d 1131
  (D.C. Cir. 1987) ................................................................................ 16

*Doe v. FEC*, 920 F.3d 866 (D.C. Cir. 2019) ............................................. 4

*FEC v. Akins*, 524 U.S. 11 (1998)..................................................... 16, 17

*Heckler v. Chaney*, 470 U.S. 821 (1985) ................................................ 17

*Motor Vehicle Manufacturers Association of the U.S. v. State Farm Mutual
  Automobile Insurance Co.*, 463 U.S. 29 (1983) ......................................... 20

*Orloski v. FEC*, 795 F.2d 156 (D.C. Cir. 1986) ........................................ 16

*Oryszak v. Sullivan*, 576 F.3d 522 (D.C. Cir. 2009)...................................... 6

*People for the Ethical Treatment of Animals v. U.S. Department of Agriculture*,
  797 F.3d 1087 (D.C. Cir. 2015)........................................................... 5

*Sierra Club v. Jackson*, 648 F.3d 848 (D.C. Cir. 2011) .................................. 6, 16

*Trudeau v. Federal Trade Commission*, 456 F.3d 178 (D.C. Cir. 2006) ..................6

**Statutes**

5 U.S.C. § 701(a)(2) .................................................................... 5, 6, 17

28 U.S.C. § 1331 ............................................................................... 6

52 U.S.C. § 30109(a)(8) ................................................................. 13

52 U.S.C. § 30109(a)(8)(A) ............................................................. 7

52 U.S.C. § 30109(a)(8)(C) ............................................................. 7

**Regulatory Authorities**

11 C.F.R. § 100.72(b) .................................................................... 15

11 C.F.R. § 100.72(b)(2) ................................................................ 15

11 C.F.R. § 100.131(b) .................................................................. 15

**Rules**

Fed. R. Civ. P. 12(h)(1) ................................................................. 7

# GLOSSARY OF ABBREVIATIONS

| | |
|---|---|
| **APA** | Administrative Procedure Act |
| **FEC** | Federal Election Commission |
| **FECA** | Federal Election Campaign Act |
| **MUR** | Matter Under Review |
| **PAC** | Political Committee |

## SUMMARY OF ARGUMENT

New Republican PAC ("New Republican") fails to rebut End Citizens United PAC's ("End Citizens United") showing that the district court erred in upholding the Federal Election Commission's ("FEC" or "Commission") dismissal of End Citizens United's two administrative complaints. The credible allegations of those complaints establish reason to believe that U.S. Senator Rick Scott, his campaign, and New Republican violated federal campaign finance law.

*First*, New Republican fails to rebut End Citizen United's showing that the district court had subject-matter jurisdiction to review the FEC's dismissal of Matter Under Review ("MUR") 7370—concerning End Citizens United's candidacy-filing, organization-filing, nondisclosure, and soft-money claims. New Republican does not dispute End Citizens United's showing that reviewability is not a jurisdictional issue. And New Republican fails to refute End Citizens United's showing that the FEC's dismissal of MUR 7370 is reviewable. New Republican's claims to the contrary depend on an overstatement of this Court's holdings in *Citizens for Responsibility & Ethics in Washington* [("*CREW*")] *v. FEC*, 892 F.3d 434 (D.C. Cir. 2018) (hereinafter "*Commission on Hope*") and *CREW v. FEC*, 993 F.3d 880 (D.C. Cir. 2021) (hereinafter "*New Models*"), as well as a misinterpretation of the controlling Commissioners' Statement of Reasons ("Statement"). While a dismissal grounded on an independent discretionary rationale may be unreviewable, a

dismissal based on the Commissioners' interpretation of FECA—like that at issue here—is decidedly not. Even if *Commission on Hope* and *New Models* preclude review of the Statement, New Republican has failed to show that this Court should follow those rulings, given that they are inconsistent with the established law of the Supreme Court and this Circuit.

*Second*, New Republican fails to rebut that the FEC's dismissal of MUR 7496—regarding the coordination claims—was contrary to law, largely ignoring End Citizens United's arguments and much of the district court's own reasoning. New Republican inaccurately suggests that End Citizens United failed to produce "actual evidence" to support its claims, Intervenor-Appellee's Br. (hereinafter "Opp'n") at 23; but New Republican ignores the low bar set by the applicable reason-to-believe standard, which requires only that allegations be sufficiently credible to warrant conducting an investigation, *Campaign Legal Ctr. v. FEC*, No. 19-2336 (JEB), --- F. Supp. 3d ----, 2022 WL 17496220 at *8 (D.D.C. Dec. 8, 2022). As End Citizens United has demonstrated, *see, e.g.*, Appellant's Br. (hereinafter "Br.") at 35-38, its coordination claims, and the record evidence supporting them, were more than sufficient to clear this low bar.

New Republican likewise erroneously suggests that the district court could have dispensed with the coordination claims based on the controlling Commissioners' invocation of prosecutorial discretion. But the Statement's

invocation of prosecutorial discretion, by its own clear language, does not apply to the coordination claims. *See* JA290-91. The district court thus found—correctly—that it had jurisdiction over these claims. *See* JA108, 110.

New Republican's primary argument is that the controlling Commissioners did not act contrary to law because they dismissed the coordination claims "for lack of evidence." Opp'n at 31 (quoting JA290). But New Republican does not point to any analysis in the Statement of any evidence related to the coordination claims— nor can it, as the Commissioners did not consider the merits of these claims. Instead, New Republican insists that the controlling Commissioners "explicitly considered" evidence that they did not, Opp'n at 30, while simultaneously ignoring the evidence the district court deemed "critical" to its analysis—as well as *all* of End Citizens United's arguments about the evidentiary flaws with the district court's decision, *see* Br. at 44-51. Finally, New Republican fails to engage meaningfully with the clear language in the Statement that does explain the controlling Commissioners' faulty reasoning for dismissing the coordination claims. *See* JA282 n.2 ("Footnote 2").

In sum, New Republican has failed to rebut End Citizens United's showing that the district court erred in upholding the dismissal of End Citizens United's claims in MURs 7370 and 7496. Accordingly, this Court should reverse.

**ARGUMENT**

I.  **New Republican Fails to Rebut End Citizens United's Showing that the District Court Had Subject-Matter Jurisdiction to Review the FEC's Dismissal of MUR 7370**

New Republican fails to rebut End Citizens United's explanation of the district court's legal errors. At the outset, New Republican does not dispute that the district court erred in finding that it lacked subject-matter jurisdiction over the dismissal[1] of MUR 7370. Next, New Republican has failed to refute End Citizen United's showing that the FEC's dismissal is reviewable. Instead, New Republican misinterprets both this Court's precedents and the controlling Commissioners' Statement, which bases the FEC's dismissal on legal interpretation that this Court has held is reviewable under FECA. Finally, New Republican fails to show that *Commission on Hope* and *New Models* are consistent with prior, controlling rulings

---

[1]    A point of clarification is in order regarding the Commission's procedure for dismissing an administrative complaint. New Republican incorrectly suggests that a deadlocked reason-to-believe vote automatically results in dismissal and final agency action. *See* Opp'n at 5-6. Instead, even where the Commission has deadlocked on whether to find reason to believe, an FEC enforcement matter is not dismissed until a majority of the Commissioners have voted in favor of a distinct motion to close the enforcement file—as occurred in this case. *Compare* JA270-71 (reflecting that the FEC deadlocked 3-3 on whether to find "reason to believe" on May 20, 2021), with JA272-73 (reflecting that weeks later, on June 10, 2021, the FEC deadlocked on an additional motion before successfully "[c]los[ing] the file" with a 5-1 vote). *See, e.g., Doe v. FEC*, 920 F.3d 866, 871 n.9 (D.C. Cir. 2019) ("When the Commission ended its investigation and closed the file, it 'terminate[d] its proceedings' within the meaning of 11 C.F.R. § 111.20(a).").

of the Supreme Court and this Circuit holding that FEC dismissals are subject to judicial review.

### A. New Republican Does Not Dispute that Reviewability Under FECA Is Not a Jurisdictional Issue

New Republican does not attempt to rebut End Citizens United's showing that the district court erred by finding that it lacked subject-matter jurisdiction as a result of the court's conclusion that the FEC's dismissal of MUR 7370 is unreviewable. *See* Opp'n at 17 n.4. This Court has unequivocally stated that, under FECA, "reviewability is not a jurisdictional issue." *Campaign Legal Ctr. & Democracy 21 v. FEC*, 952 F.3d 352, 357 (D.C. Cir. 2020) (per curiam) (hereinafter "*Democracy 21*") (citing *People for the Ethical Treatment of Animals v. U.S. Dep't of Agric.*, 797 F.3d 1087, 1097-98 (D.C. Cir. 2015)); *see also, e.g.*, *New Models*, 993 F.3d at 895 (affirming grant of summary judgment to Commission—rather than dismissal for lack of subject-matter jurisdiction—where controlling commissioners' invocation of prosecutorial discretion rendered FEC dismissal unreviewable).

Instead of defending the district court's ruling, New Republican claims that "this Circuit couches non-reviewability both as jurisdictional, and as not." Opp'n at 17 n.4 (citations omitted). But that is incorrect. *Democracy 21* is the latest in a long line of this Circuit's precedents concluding that the unreviewability of agency action under "Section 701(a)(2) of the APA is not . . . a jurisdictional bar." *People for the Ethical Treatment of Animals*, 797 F.3d at 1097 (citation omitted); *see also Califano*

*v. Sanders*, 430 U.S. 99, 107 (1977) ("[T]he APA does not afford an implied grant of subject-matter jurisdiction permitting federal judicial review of agency action."); *Oryszak v. Sullivan*, 576 F.3d 522, 524 (D.C. Cir. 2009) ("[W]e conclude [that APA § 701(a)(2)] is not a jurisdictional bar."); *Trudeau v. FTC*, 456 F.3d 178, 185 (D.C. Cir. 2006) ("[T]he APA neither confers nor restricts jurisdiction."); *Sierra Club v. Jackson*, 648 F.3d 848, 854 (D.C. Cir. 2011) ("Applying *Oryszak* and *Trudeau*, we conclude that a complaint seeking review [under APA] § 701(a)(2), . . . should be dismissed under Rule 12(b)(6), not under the jurisdictional provision of Rule 12(b)(1).").

Indeed, the lone case New Republican cites as allegedly supporting the proposition that non-reviewability is a jurisdictional issue, *see* Opp'n at 17 n.4 (citing *Oryszak*, 576 F.3d 524), holds precisely the opposite. In *Oryszak*, this Court explained that a district court that dismissed an APA claim under Rule 12(b)(1) on the ground that the challenged decision was committed to agency discretion by law, "should [have] dismissed not for want of subject matter jurisdiction but for failure to state a claim." 576 F.3d at 524. The Court agreed that the challenged decision was committed to agency discretion under APA § 701(a)(2), but clarified that the district court nevertheless had subject-matter jurisdiction pursuant to 28 U.S.C. § 1331, which "'confer[s] jurisdiction on federal courts to review agency action.'" *Id.* at 524-25 (quoting *Califano*, 430 U.S. at 105).

6

New Republican wrongly suggests that it does not matter whether the district court correctly treated reviewability as a jurisdictional issue. *See* Opp'n at 17 n.4. On the contrary, whether reviewability is jurisdictional has important implications— for example, it affects whether reviewability can be waived, *see* Fed. R. Civ. P. 12(h)(1), and whether a court can, in its discretion, reach the merits even where reviewability was raised, just as this Court did in *Democracy 21*, *see* 952 F.3d at 356-57. The district court's misstatement of the law, at odds with this Court's prior holdings, would lead to erroneous and problematic results on all of these questions.

### B.    New Republican Has Failed to Show that the Commission's Dismissal of MUR 7370 Is Not Reviewable

As End Citizens United explained in its opening brief, *see* Br. at 26-35, even if FECA reviewability were a jurisdictional issue, the district court nevertheless had jurisdiction because the FEC's dismissal of MUR 7370 is reviewable. FECA contains "an unusual provision that allows a private party to challenge a nonenforcement decision of the [FEC] if it is 'contrary to law.' 52 U.S.C. § 30109(a)(8)(A), (C)." *New Models*, 993 F.3d at 882. This Court has explained that the FEC's decision to dismiss an administrative complaint is reviewable under this provision where that decision was made "on the basis of its interpretation of FECA." *Comm'n on Hope*, 892 F.3d at 441 n.11; *see also New Models*, 993 F.3d at 884. Here, the Commission's dismissal is reviewable because, as the district court

acknowledged, the controlling Commissioners' interpretation of FECA was the basis for their alleged exercise of prosecutorial discretion. *See* JA109.

New Republican's assertions to the contrary are incorrect because they are based on mischaracterizations of both this Court's holdings in *Commission on Hope* and *New Models* and the controlling Commissioners' Statement.

### 1. New Republican Overstates the Holdings in *Commission on Hope* and *New Models*

New Republican's claim that the Commission's dismissal is unreviewable is based on an overstatement of this Court's holdings in *Commission on Hope* and *New Models*. To be sure, as New Republican emphasizes repeatedly, *see* Opp'n at 2, 14, 16, 25, a dismissal "based even in part on prosecutorial discretion is not reviewable" where the exercise of discretion rests on prudential and discretionary considerations, *New Models*, 993 F.3d at 882. But a dismissal allegedly based on prosecutorial discretion *is* reviewable where the purported exercise of discretion rests instead on the Commissioners' interpretation of FECA. As End Citizens United has explained, Br. at 27-29, even a partial assertion of prosecutorial discretion must be offered as a "distinct ground[]" for dismissal that rests not on legal analysis, but "squarely on prudential and discretionary considerations" to shield a dismissal from judicial review. *New Models*, 993 F.3d at 884, 886. In contrast, where controlling Commissioners "reference their merits analysis as a ground for exercising prosecutorial discretion," *CREW v. FEC* ("*New Models II*"), 55 F.4th 918, 920-21

(D.C. Cir. 2022) (Rao, J., concurring in denial of reh'g en banc), a dismissal is reviewable because, in that case, "the agency's action [is] based entirely on its interpretation of the statute," *Comm'n on Hope*, 892 F.3d at 441 n.11.

In *Commission on Hope*, for example, the Court explained that an FEC dismissal "on the basis of [the Commission's] interpretation of FECA . . . is subject to judicial review to determine whether it is 'contrary to law.'" *Id.* at 441. In contrast, the dismissal in that case was unreviewable, the Court held, because the controlling Commissioners' statement explained that they voted against moving forward with the matter not based on any legal interpretation, but because the "case did not warrant further use of Commission resources." *Id.* at 438-39 ("The three naysayers on the Commission placed their judgment squarely on the ground of prosecutorial discretion.").

Similarly, in *New Models*, the Court held that a Commission dismissal was unreviewable because the Statement of Reasons made clear that the controlling Commissioners exercised their discretion *independently* from their interpretation of the law. *See New Models*, 993 F.3d at 884. As the Court explained, "[t]he Commission's decision to dismiss [the] complaint against New Models rested on two *distinct* grounds: the Commission's interpretation of FECA and its 'exercise of . . . prosecutorial discretion.'" *Id.* (emphasis added). The distinct invocation of prosecutorial discretion thus "rested squarely on prudential and discretionary

9

considerations relating to resource allocation and the likelihood of successful enforcement," and not "legal analysis of FECA's . . . requirements"—which were also offered by the Statement, but only "in addition" to the prudential and discretionary grounds. *Id.* at 886.

The language of both cases makes clear that New Republican overreaches in claiming that this Court has allowed the Commission to shield from judicial review a dismissal based entirely on interpretation of FECA with the simple expedient of labeling its legal analysis as "prosecutorial discretion." Rather, *Commission on Hope* and *New Models* recognize the distinction between dismissals independently based on prudential and discretionary reasons (even where some legal analysis is offered as an additional, distinct basis for dismissal), and those dismissals that are grounded in legal analysis itself. While New Republican objects that the rule set by *Commission on Hope* and *New Models* is "hopelessly unworkable," Opp'n at 24, the alternative rule New Republican proposes—allowing the Commission to shield even its legal analysis from review—is irreconcilable with this Court's precedents and would eviscerate FECA's "contrary to law" judicial review provision. This Court should not accept New Republican's invitation to extend its prior decisions to cases like this one, where the controlling Commissioners have wrapped their legal analysis in the garb of discretionary language to shield that analysis from review by this Court.

  **2.  New Republican Mischaracterizes the Statement of Reasons, Which Is Reviewable**

  The discretion-based dismissals in *Commission on Hope* and *New Models* are distinguishable from the merits-based dismissal here. Indeed, rather than asserting any independent discretionary rationale, the controlling Commissioners in this case expressly rooted their purported "discretion" in their interpretation of the law. *See* Br. at 30-32.

  New Republican nevertheless frames the controlling Commissioners' legal interpretation as a mere "factor" in their decision to dismiss. *See* Opp'n at 17, 21. But this is a mischaracterization; each of the controlling Commissioners' purportedly discretionary justifications for dismissal is premised upon their erroneous legal conclusion that proof of an individual's subjective intent to become a candidate is required to substantiate a violation of FECA's candidacy-filing requirement.

  New Republican attempts to parse several "factors" out of this single basis for dismissal, but each one is an offshoot of the same legal conclusion. To begin, New Republican lists as separate "factors" the alleged "lack of evidence offered by End Citizens United" and the alleged existence of a "thin evidentiary reed." Opp'n at 22-23. Both "factors," however, are expressly rooted in the controlling Commissioners' claim that the law requires evidence of subjective intent. The controlling Commissioners assert the alleged lack of evidence at the same time they claim that

FECA requires evidence of Scott's "subjective intent during this period," which they insist "would have necessitated a wide-ranging, costly, and invasive investigation." *See* JA290. Likewise, the controlling Commissioners cite the "thin evidentiary reed" in the same sentence they assert that a "lengthy and cumbersome investigation" would be required—an investigation that they assert would be lengthy and cumbersome *because* they would have "to probe [Scott's] subjective intent." *See id.*

New Republican similarly claims that the Statement bases the dismissal on other allegedly discretionary "factors," including resource drain, backlog, and statute of limitations concerns. *See* Opp'n at 22-23. But the controlling Commissioners' assessment of the resources needed to investigate and the time such an investigation would take relative to the backlog of other cases and the statute of limitations is directly tied to their legal assessment of the nature of evidence required. *See* Br. at 31-32. The controlling Commissioners claim that FECA's candidacy determination would require evidence of subjective intent to meet the legal standard, which in turn would allegedly require a "wide-ranging, costly, and invasive" investigation. *See* JA290. In this way, each of the alleged "prudential and discretionary considerations," *see* Opp'n at 23, is grounded in the controlling Commissioners' legal analysis. Their "discretionary" rationale, therefore, cannot be separated from their antecedent legal conclusion that FECA requires an inquiry into subjective intent. Whether FECA and Commission regulations require such an inquiry is

unquestionably a legal determination that is subject to "contrary to law" review under 52 U.S.C. § 30109(a)(8).[2]

New Republican attempts to minimize the significance of the Statement's legal determination that FECA's candidacy inquiry requires probing subjective intent by characterizing it as a mere "offhand reference" and a "remark." Opp'n at 23. But the importance of the Statement's own reasoning cannot be minimized, as this Court has said it "is necessary to allow for meaningful judicial review of the Commission's decision not to proceed." *Common Cause v. FEC*, 842 F.2d 436, 449 (D.C. Cir. 1988). Moreover, a ruling by the district court that the controlling Commissioners' stated view of FECA is "contrary to law" would not risk constituting an advisory opinion, as New Republican claims, *see* Opp'n at 23, because the Statement premises its alleged exercise of discretion on that legal determination without providing any independent non-legal ground for dismissal.

Next, New Republican does not dispute End Citizen United's showing that "the district court . . . erred when it concluded that the legal analysis undergirding the invocation of prosecutorial discretion must be 'erroneous' for the dismissal to be

---

[2]     New Republican also points to the Statement's stated concern about the "regulation of core constitutional protected activity," Opp'n at 22, but this is also premised on the controlling Commissioners' incorrect legal determination that the law would have required probing Scott's subjective intent, *see* JA290. In any event, the question of whether and to what extent the First Amendment may limit the FEC's ability to investigate potential FECA violations is itself a legal question.

reviewable." Br. at 32 (citing JA109). As End Citizens United has explained, an FEC dismissal is reviewable whenever that decision was made "on the basis of its interpretation of FECA," *Comm'n on Hope*, 892 F.3d at 441 n.11, regardless of the subsequent merits determination of whether that interpretation was contrary to law, *see* Br. at 32-33.

Nonetheless, if this Court determines that the FEC's dismissal is reviewable, it should also reverse the district court's erroneous conclusion that the law requires the agency to probe subjective intent to determine candidacy, and hold that the agency's dismissal on that basis was contrary to law. *See* Br. at 29-30. As End Citizens United has demonstrated, the controlling Commissioners' legal conclusion that determining when an individual becomes a candidate requires probing subjective intent is erroneous. *See* Br. at 29-33. In response, New Republican concedes that, when determining candidacy, "the FEC typically examines objective factors," but notes that the objective factors that FEC regulations instruct the agency to examine can be indicia of a candidate's subjective intent and that the agency has in previous cases examined a putative candidate's statements indicating his or her state of mind. Opp'n at 21 n.7. If anything, such use of documented public statements and other objective facts only further demonstrates that the FEC's candidacy determination is not based on an intrusive "probe" of the candidate's subjective beliefs and plans. Neither the Statement nor New Republican identifies a single case

in which the FEC conducted such a probe. *See* Opp'n at 21 n.7 (citing MUR 5394 (Thompson) (dismissing complaint that had only "referenced a number of newspaper articles including statements by Senator Thompson" as evidence of candidacy)).

Illustrating the point, the FEC General Counsel's recommendation to the Commission in this matter concluded that Scott became a candidate as early as 2017 because his "objectively deliberate actions" indicated that "he undertook activities designed to amass funds that were to be spent on supporting his Senate candidacy after he declared such candidacy in April 2018." JA221 (citing 11 C.F.R. §§ 100.72(b), 100.131(b)). Not only that, but the controlling Commissioners themselves acknowledge in their Statement that the agency's candidacy regulations "are fairly intuitive and objective" and "provide there are indicia of candidacy when an 'individual . . . undertakes activities designed to amass campaign funds that would be spent after he or she becomes a candidate.'" JA286-87 (quoting 11 C.F.R. § 100.72(b)(2)). And yet their Statement nevertheless concludes it would be necessary to probe Scott's subjective intent. JA290. That conclusion is fatally contrary to law.

### 3. New Republican Has Failed to Show that *Commission on Hope* and *New Models* Are Consistent with Supreme Court and D.C. Circuit Precedent

*Commission on Hope* and *New Models*, properly applied, do not preclude review of the dismissal in this case, which is grounded in legal error. *See* Br. at 26-

33; *supra* pp. 8-14. If, however, these cases are read to preclude judicial review here, then the Court should decline to follow them. *See* Br. at 33-35; Br. of *Amicus Curiae* Citizens for Responsibility and Ethics in Washington in Supp't of Pl.-Appellant (hereinafter "*Amicus Curiae* Br.") at 10-17 (Feb. 1, 2023). Under the law of this Circuit, "when a decision of one panel is inconsistent with the decision of a prior panel, the norm is that the later decision, being in violation of that fixed law, cannot prevail." *Sierra Club*, 648 F.3d at 854. As multiple Judges of this Court have expressed, both *Commission on Hope* and *New Models* are inconsistent with fixed law because they contravene the Supreme Court's decision in *FEC v. Akins*, 524 U.S. 11 (1998) and this Court's decisions in *Chamber of Commerce v. FEC*, 69 F.3d 600 (D.C. Cir. 1995), *Democratic Congressional Campaign Committee v. FEC*, 831 F.2d 1131 (D.C. Cir. 1987) (hereinafter, "*DCCC*"), and *Orloski v. FEC*, 795 F.2d 156 (D.C. Cir. 1986). *See New Models*, 993 F.3d at 900-01 (Millett, J., dissenting); *Democracy 21*, 952 F.3d at 363 (Edwards, J. concurring); *CREW v. FEC*, 923 F.3d 1141, 1145 (D.C. Cir. 2019) (Pillard, J., dissenting from denial of reh'g en banc).

In response, New Republican does not even attempt to claim that *Commission on Hope* and *New Models* are consistent with this Court's rulings in *Chamber of Commerce*, *DCCC*, and *Orloski*. *See* Opp'n at 25-27.

New Republican asserts that *Akins* is distinguishable because it "had nothing to do with prosecutorial discretion." Opp'n at 26. Not so. While holding that the

plaintiffs had standing, the Supreme Court in *Akins* rejected the "FEC['s] argu[ment] that we should deny respondents standing because this case involves an agency's decision not to undertake an enforcement action—an area generally not subject to judicial review." *Akins*, 524 U.S. at 26. In response to the FEC's argument about reviewability, the Court explained that, although "agency enforcement decisions 'ha[ve] traditionally been 'committed to agency discretion''—as reflected in APA § 701(a)(2) and *Heckler v. Chaney*, 470 U.S. 821 (1985)—with FECA, "[w]e deal here with a statute that explicitly indicates the contrary." *Id. Akins* thus had much to say about the reviewability of the FEC's prosecutorial discretion, and New Republican's opinion that the Supreme Court "did not need to address" reviewability because the case involved standing is irrelevant. Opp'n at 26.

As *Amicus Curiae* explains in detail, *see Amicus Curiae* Br. at 12-14, *Akins* is contradicted by *New Models*'s subsequent claims that "FECA cannot alter the APA's limitation on judicial review" and that "the [FEC's] decision not to bring an administrative enforcement action is 'committed to agency discretion by law' and therefore unreviewable," 993 F.3d at 888, 889 (citation omitted). Due to this conflict with existing Supreme Court precedent, and due to their undisputed conflict with this Circuit's precedents, *Commission on Hope* and *New Models* should not be followed.

17

## II.    New Republican Fails to Rebut End Citizens United's Showing that the FEC's Dismissal of MUR 7496 Was Contrary to Law

New Republican fails to rebut End Citizens United's showing that the FEC's dismissal of MUR 7496—regarding the coordination claims—was contrary to law, largely ignoring End Citizens United's arguments and much of the district court's own reasoning.

Instead, New Republican leans heavily on the deference owed to the FEC, *see, e.g.*, Opp'n at 28—but that deference is not boundless. Indeed, it cannot rescue the controlling Commissioners' flawed dismissal in light of the "low bar" set by the "reason to believe" standard governing the FEC's decision. *Campaign Legal Ctr.*, 2022 WL 17496220 at *8. A finding of "reason to believe" does not trigger any penalties, but only initiates an FEC investigation of the administrative complaint's allegations, during which the agency may collect evidence of potential wrongdoing to later support a separate finding that there is probable cause to believe a violation occurred. *See* Br. at 10. Accordingly, the "reason to believe" standard requires "only a credible allegation" of wrongdoing, and "does not require 'conclusive evidence' that a violation occurred or even 'evidence supporting probable cause' for finding a violation." *Campaign Legal Ctr.*, 2022 WL 17496220 at *8 (citation omitted).

New Republican ignores this low bar set by the reason-to-believe standard and demands too much with its repeated and inaccurate suggestions that End Citizens United failed to produce "actual evidence that either New Republican or

Senator Scott had violated the Act." Opp'n at 23; *see also id.* at 29-32. As End Citizens United has demonstrated, based on the pre-investigation evidence in the administrative record, End Citizens United's coordination allegations are more than sufficiently "credible" to clear the low bar of "reason to believe" and warrant an investigation. *See* Br. at 35-52. The controlling Commissioners' adverse decision is thus contrary to law.

New Republican is also wrong to suggest that "[t]he district court chose not to, but could have, granted summary judgment to New Republican PAC entirely based on the Commission's invocation of prosecutorial discretion in the Statement of Reasons." Opp'n at 28 n.11; *see also id.* at 32. As End Citizens United pointed out to the district court, *see* ECF No. 23 at 37, ECF No. 25 at 28-29, ECF No. 30 at 8-10, the Statement's invocation of prosecutorial discretion, by its own clear language, does not apply to the coordination claims in MUR 7496, *see* JA290-91 (stating that "we . . . exercised our prosecutorial discretion regarding the allegations that Scott and his campaign committee failed to timely file candidacy and organization forms"). Accordingly, the district court correctly found that it had "jurisdiction over . . . M.U.R. 7496, because the FEC did not cite its prosecutorial discretion in dismissing [End Citizens United]'s complaint regarding that claim." JA110; *see also* JA108 (explaining that "the FEC's exercise of prosecutorial discretion as to one claim does not divest this Court's review of a separate claim").

Turning to its primary argument, New Republican insists that the controlling Commissioners did not dismiss End Citizens United's coordination claims based on the merits of its candidacy-filing or soft-money claims, but instead "unequivocally 'dismissed' the coordination challenge 'for lack of evidence.'" Opp'n at 31 (quoting JA290); *see also id.* at 29 (same, quoting JA290); *id.* at 30 (same, quoting JA290); *id.* at 30 n.13 (same). But besides an excerpt from the last sentence of the Statement, *see* JA290, New Republican does not point to *any* analysis of any evidence related to the coordination claims. Nor can it, as the controlling Commissioners did not engage with the record evidence to assess the merits of these claims at all—reason alone to find the dismissal contrary to law. *See Motor Vehicle Mfrs. Ass'n of the U.S. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

New Republican attempts to sidestep this problem by insisting, as the district court did, that the controlling Commissioners "explicitly considered" Ms. Hazelwood's affidavit in dismissing the coordination claims. Opp'n at 30; *see also id.* at 31 (quoting JA111-12). But that is not true; as End Citizens United has pointed out, *see* Br. at 49-50; ECF No. 30 at 23, the Statement never connected Ms. Hazelwood's affidavit to these allegations. New Republican does nothing to rebut this fact, save its conclusory statement that "the district court was correct" in its reasoning. Opp'n at 31; *see also id.* at 30 n.13. Indeed, New Republican avoids *all* of End Citizens United's arguments about Ms. Hazelwood's affidavit, namely that

neither the General Counsel nor the controlling Commissioners credited it with respect to the coordination claims, Br. at 48-50, and that, regardless, the affidavit was flawed and deserved little weight, *id.* at 50-51.

New Republican likewise does not engage with the evidence the district court deemed "critical" to its analysis, JA110,—specifically the General Counsel's recommendation to take no action at the time with respect to the coordination claims. And failing to even acknowledge that recommendation or the district court's analysis of it, New Republican does not address, let alone refute, End Citizens United's arguments that the district court fundamentally mischaracterized the very piece of evidence foundational to its decision. *See* Br. at 44-48.

Indeed, contrary to New Republican's argument, the clear language of the Statement confirms that the controlling Commissioners dismissed the coordination claims not on the basis of any evidence, but on the faulty reasoning that they were "required to dismiss the remainder of the allegations against Scott, his authorized committee, and New Republican PAC" because "[a]ll of those allegations would have required, at a minimum, a threshold finding that Scott had failed to file a statement of candidacy at the appropriate time, or that New Republican had violated the soft money rules." JA282 n.2 (citing Certification for MURs 7370 and 7496). New Republican never once mentions the language of Footnote 2, and instead derides End Citizens United's "musings about footnotes," Opp'n at 31, even though

21

the Statement (including its footnotes) provides the basis for judicial review, *see Common Cause*, 842 F.2d at 449. Nor does New Republican respond to End Citizens United's arguments, *see* Br. at 41-44, as to how the district court misinterpreted Footnote 2 as "*not* refer[ring] to the coordination communication allegations," JA112 (citing JA282 n.2) (emphasis in original).

Instead, New Republican asserts only that, when "[p]laced in context, the better reading of" Footnote 2 is that "(1) based on its exercise of prosecutorial discretion, the Commission would not investigate Senator Scott's history as New Republican's chair, and (2) without an investigation into that time frame, the paltry evidentiary showing mustered by End Citizens United could not sustain a reason-to-believe finding." Opp'n at 31-32. But this argument too fails. First, while an investigation of Scott's history as New Republican's chair might well elicit information relevant to the coordination claims—as the General Counsel recognized, *see* JA232—those claims do not depend on any such investigation, as they concern conduct that occurred after Scott left New Republican. Second, New Republican's insistence that End Citizens United's "paltry evidentiary showing . . . could not sustain a reason-to-believe finding," Opp'n at 32, distorts the "reason to believe" standard underlying the controlling Commissioners' decision—which, again, New Republican never mentions. As End Citizens United has demonstrated, *see, e.g.*, Br.

22

at 35-38, its allegations are more than sufficiently credible to warrant an investigation into the coordination claims.

In sum, New Republican fails to rebut that the district court erred in upholding the FEC's dismissal of the coordination claims, refusing to engage with most of End Citizens United's arguments, or even to defend the district court's decision on its own terms. Accordingly, the Court should reverse the district court's dismissal of MUR 7496.

## CONCLUSION

For the foregoing reasons, End Citizens United respectfully requests that this Court reverse the district court's dismissal of this case.


Dated: March 17, 2023                    Respectfully submitted,

                                         /s/ *Kevin P. Hancock*

                                         Adav Noti
                                         Kevin P. Hancock
                                         Alexandra Copper
                                         Allison Walter
                                         CAMPAIGN LEGAL CENTER ACTION
                                         1101 14th Street, NW, St. 400
                                         Washington, D.C. 20005
                                         (202) 736-2000
                                         khancock@campaignlegalcenter.org

                                         *Counsel for Appellant*

## CERTIFICATE OF COMPLIANCE

This brief complies with the word limit of Fed. R. App. P. 32(a)(7)(B)(ii) because it contains 5,358 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and Circuit Rule 32(e)(1).

This filing complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared using Microsoft Office Word 2016 in Times New Roman 14-point font.

## CERTIFICATE OF SERVICE

I certify that on March 17, 2023, I electronically filed this brief with the Clerk of Court for the United States Court of Appeals for the District of Columbia Circuit using the appellate CM/ECF system, thereby serving all persons required to be served.

*/s/ Kevin P. Hancock*
Kevin P. Hancock