**No. 22-5277**

**UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT**

END CITIZENS UNITED PAC,
*Plaintiff-Appellant*,

*v.*

FEDERAL ELECTION COMMISSION,
*Defendant-Appellee*,

NEW REPUBLICAN PAC,
*Intervenor-Appellee.*

On Appeal from the United States District Court
for the District of Columbia, No. 1:21-cv-2128-RJL
Before the Honorable Richard J. Leon

**PETITION FOR REHEARING EN BANC**

Adav Noti
Kevin P. Hancock
Alexandra Copper
CAMPAIGN LEGAL CENTER ACTION
1101 14th St. NW, Suite 400
Washington, DC 20005
(202) 736-2200
khancock@campaignlegalcenter.org

*Counsel for Petitioner*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................ iii

GLOSSARY OF ABBREVIATIONS ................................................. v

INTRODUCTION AND RULE 35(b) STATEMENT ............................ 1

BACKGROUND .............................................................................. 3

REASONS FOR GRANTING REHEARING EN BANC ........................ 7

    I.  Immunizing the Commission's Legal Errors from Review Contravenes FECA and Controlling Precedent ................................................ 7

    II. The Split-Panel Decision Vitiates FECA's Enforcement Scheme and the Critically Important Interests It Serves .......................................... 15

CONCLUSION ............................................................................... 18

CERTIFICATE OF COMPLIANCE ................................................... a

CERTIFICATE OF SERVICE ........................................................... b

ADDENDUM ................................................................................. c

CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES ............. d

CORPORATE DISCLOSURE STATEMENT ........................................ f

PANEL DECISION ......................................................................... g

# TABLE OF AUTHORITIES

*Authorities upon which appellant principally relies are marked with an asterisk*

**Cases:**                                                                      Page

*Akins v. FEC*, 101 F.3d 731 (D.C. Cir. 1996) (en banc)..........................................14

*Buckley v. Valeo*, 424 U.S. 1 (1976)........................................................................17

*Campaign Legal Ctr. v. FEC*, 89 F.4th 936 (D.C. Cir. 2024) ...................................2

*Campaign Legal Ctr. & Democracy 21 v. FEC*,
    952 F.3d 352 (D.C. Cir. 2020)......................................................................11, 12

*Chamber of Commerce v. FEC*, 69 F.3d 600 (D.C. Cir. 1995) .............................2, 9

*CREW v. Am. Action Network*, 590 F. Supp. 3d 164 (D.D.C. 2022)......................11

*CREW v. FEC*,
    892 F.3d 434 (D.C. Cir. 2018) ("*Commission on Hope*").....................1, 3, 8, 12

*CREW v. FEC*,
    923 F.3d 1141 (D.C. Cir. 2019) ("*Commission on Hope II*") .......... 1-2, 3, 12, 15

*CREW v. FEC*,
    993 F.3d 880 (D.C. Cir. 2021) ("*New Models*")...........................1, 10, 11, 12, 13

*CREW v. FEC*,
    55 F.4th 918 (D.C. Cir. 2022) ("*New Models II*")........... 2, 3, 4, 9, 12, 13, 16, 17

*CREW v. FEC*,
    316 F. Supp. 3d 349 (D.D.C. 2018)....................................................................11

*Democratic Congressional Campaign Committee v. FEC*,
    831 F.2d 1131 (D.C. Cir. 1987) ("*DCCC*")....................................................2, 9

*End Citizens United PAC v. FEC*,
    90 F.4th 1172 (D.C. Cir. 2024).................... 1, 2, 4, 7, 8, 9, 10, 12, 13, 14, 15, 16

*FEC v. Akins*, 524 U.S. 11 (1998) .........................................................2, 9, 10, 14

*Heckler v. Chaney*, 470 U.S. 821 (1985)..........................................1, 5, 7, 8, 10, 11

*I.C.C. v. Bhd. of Locomotive Engineers*, 482 U.S. 270 (1987)...............................14

*Lieu v. FEC*, 370 F. Supp. 3d 175 (D.D.C. 2019) ...................................................11

*Orloski v. FEC*, 795 F.2d 156 (D.C. Cir. 1986)........................................... 2, 9-10

*Pub. Citizen v. FEC*, 547 F. Supp. 3d 51 (D.D.C. 2021)........................................11

*SEC v. Chenery Corp.*, 332 U.S. 194 (1947) .........................................................14

**Statutes:**

52 U.S.C. § 30102(e)(1)............................................................................................ 4

52 U.S.C. § 30103(a) ................................................................................................ 4

52 U.S.C. § 30104(a) ................................................................................................ 4

*52 U.S.C. § 30109(a)(8)............................................................................... 3, 4, 10, 11

52 U.S.C. § 30109(a)(8)(A) ..................................................................................... 15

52 U.S.C. § 30109(a)(8)(C) .................................................................................. 9, 15

**Other Materials:**

Brief for Petitioner, *FEC v. Akins*, 524 U.S. 11 (No. 96-1590), 1997 WL
523890 (Aug. 21, 1997) ...................................................................................10

Reply Brief for Petitioner, *FEC v. Akins*, 524 U.S. 11 (No. 96-1590), 1997
WL 675443 (Oct. 30, 1997)..............................................................................10

Statement of Reasons of Chair Lee Goodman & Comm'rs Caroline C.
Hunter and Matthew S. Petersen, MUR 6396 (Crossroads GPS) (Jan. 8,
2014), https://www.fec.gov/files/legal/murs/6396/14044350970.pdf ...............11

# GLOSSARY OF ABBREVIATIONS

| CREW | Citizens for Responsibility and Ethics in Washington |
|------|------------------------------------------------------|
| FEC  | Federal Election Commission                          |
| FECA | Federal Election Campaign Act                        |
| PAC  | Political Committee                                  |

## INTRODUCTION AND RULE 35(b) STATEMENT

Rehearing is necessary to correct a line of decisions that eviscerates a critical Federal Election Campaign Act (FECA) provision allowing courts to review Federal Election Commission (FEC) decisions not to enforce the campaign-finance laws. Congress designed the FEC so that it could not act without bipartisan agreement among a majority of its six members. As "the countermeasure to otherwise predictable deadlock" created by that structure, Congress also empowered courts to "prod a reluctant FEC to act" on plausible claims, and private actors to pursue such claims when the FEC refuses. *End Citizens United PAC v. FEC*, 90 F.4th 1172, 1188 (D.C. Cir. 2024) (*ECU*) (Pillard, J., dissenting).

For decades, the Supreme Court and this Court have interpreted FECA's judicial-review provision as rebutting the presumption of nonreviewability established in *Heckler v. Chaney*, 470 U.S. 821 (1985). But starting in 2018, split-panel rulings in *CREW v. FEC*, 993 F.3d 880 (D.C. Cir. 2021) ("*New Models*"), and *CREW v. FEC*, 892 F.3d 434 (D.C. Cir. 2018) ("*Commission on Hope*"),[1] took a "wrong turn." *ECU*, 90 F.4th at 1188 (Pillard, J., dissenting). Simply put, the *CREW* cases went wrong by "[g]iving a non-majority of the [c]ommissioners enforcement discretion," *CREW v. FEC*, 923 F.3d 1141, 1144 (D.C. Cir. 2019) (en banc) (Pillard,

---

[1]     To differentiate between cases brought by CREW, this petition refers to each by the name of the administrative respondent, and to the decisions collectively as the "*CREW*" cases.

J., dissenting from denial of rehr'g en banc) ("*Commission on Hope II*"), thereby "arm[ing] an agency minority with what is in effect a judicial-review kill switch," *CREW v. FEC*, 55 F.4th 918, 922 (D.C. Cir. 2022) ("*New Models II*") (Millet, J., dissenting from denial of rehr'g en banc). Exercising this new-found power granted by the *CREW* cases, partisan-aligned non-majority blocs may now vanquish challenges to their legal interpretations by simply cloaking them in the "magic words" of prosecutorial discretion.

As this case and others demonstrate, the *CREW* rulings "continue to call out for correction." *ECU*, 90 F.4th at 1188 (Pillard, J., dissenting).[2] First, like the *CREW* rulings on which it relies, the split-panel decision here "[c]onflict[s] with FECA's terms, structure, and purpose; with the Supreme Court's decision in [*FEC v.*] *Akins*, 524 U.S. 11 [(1998]; and with [this Circuit's] decisions in *Chamber of Commerce v. FEC*, 69 F.3d 600 (D.C. Cir. 1995), *Democratic Congressional Campaign Committee v. FEC (DCCC)*, 831 F.2d 1131 (D.C. Cir. 1987), and *Orloski v. FEC*, 795 F.2d 156 (D.C. Cir. 1986)." *ECU*, 90 F.4th at 1184 (Pillard, J., dissenting).

Second, restoring FECA's judicial-review provision is an issue of exceptional importance. By "effectively scuttl[ing] FECA's enforcement mechanism," *id.*, the

---

[2]     Contemporaneously with this petition, appellant in *Campaign Legal Center v. FEC*, No. 22-5339, is also seeking en banc review of the panel decision in 89 F.4th 936 (D.C. Cir. 2024), which, like the split-panel ruling here, applies and extends the *CREW* cases.

*CREW* decisions gut FECA's campaign-finance restrictions and transparency requirements—"laws that protect the electoral building blocks of our democracy," *New Models II*, 55 F.4th at 932 (Millett, J., dissenting from denial of rehr'g en banc).

The Court should grant rehearing en banc.

## BACKGROUND

1. "The Federal Election Commission is entrusted with the weighty responsibility of ensuring public transparency and accountability by those individuals and entities expending significant sums of money on our Nation's elections." *New Models II*, 55 F.4th at 922 (Millett, J., dissenting from denial of rehr'g en banc). Congress, mindful that the Commission's partisan-balanced structure created a propensity for gridlock, gave the agency initial enforcement responsibility under FECA but crafted an unusual judicial-review provision, 52 U.S.C. § 30109(a)(8), to ensure proper implementation of the Act.

As a bulwark against "partisan gamesmanship," *Commission on Hope II*, 923 F.3d at 1142 (Griffith, J., concurring), and to "prevent the agency's frequent deadlock from sweeping under the rug serious campaign finance violations," *Commission on Hope*, 892 F.3d at 442 (Pillard, J., dissenting), Congress authorized complainants to seek judicial review when "aggrieved by" the dismissal of their enforcement complaints, and created a private right of action triggered only if,

following review, the Commission fails to conform to a court order holding the challenged agency decision "contrary to law." *See* 52 U.S.C. § 30109(a)(8).

The special review provision Congress devised thus bears two unique features. First, "to avoid nullification of FECA by a non-majority bloc of commissioners refusing to act on apparent violations of campaign-finance laws, Congress made such refusals to act—no matter the reason—reviewable in court." *ECU*, 90 F.4th at 1184 (Pillard, J., dissenting). Second, if the reviewing Court "detect[s] statutory misreading" but the agency fails to correct its error, "the court's ruling paves the way for private enforcement." *Id.* at 1187. Under this scheme, the Commission enjoys "the right of first refusal on enforcement," but "no court will force it" to bring an enforcement action if it declines to do so following judicial review. *New Models II*, 55 F.4th at 929 (Millett, J., dissenting from denial of rehr'g en banc).

2. In 2018, Plaintiff-Appellant End Citizens United PAC filed an FEC complaint alleging that U.S. Senator Rick Scott, his campaign, and New Republican PAC (a Scott-aligned super PAC) violated FECA during Scott's 2018 Senate campaign. JA118-22. Under FECA, once a person receives or spends more than $5,000 for the purpose of influencing a federal election, that person must file a statement of candidacy and create a campaign committee, which must file regular disclosure reports with the FEC. 52 U.S.C. §§ 30102(e)(1), 30103(a), 30104(a). In

addition, the candidate becomes subject to FECA's soft-money ban, which bars candidates and their agents from raising and spending money that is not restricted by FECA's limits on contribution sources and amounts. 52 U.S.C. § 30125(e)(1). As the complaint alleges, Scott violated these provisions by delaying his statement of candidacy and other related filings ("Filing Claims") while outsourcing his putative campaign's fundraising to New Republican, which raised millions outside FECA's limits that would later be spent on the Scott campaign ("Soft-Money Claims"). JA118-22.

The FEC's General Counsel recommended finding reason to believe the respondents violated FECA. JA210. The FEC deadlocked 3-3 on a motion to approve that recommendation, with the agency's three Republican commissioners voting against. JA270-71. A month later, the FEC again deadlocked along partisan lines on whether to dismiss the Filing Claims "under *Heckler v. Chaney*." JA272. (The agency did not vote whether to dismiss the Soft-Money Claims under *Chaney*. *See id.*) In light of these deadlocks, the FEC then voted 5-1 to "[c]lose the file" on the administrative complaints, thereby dismissing them. JA273.

Later, the three "controlling" commissioners, who voted against reason-to-believe and for the failed *Heckler v. Chaney* motion, issued a Statement of Reasons ("Statement") explaining the basis for their decision. JA281-91. The Statement provides more than five pages of "Legal Analysis" claiming FECA was not violated.

JA285-90. That analysis acknowledges that "significant evidence of Scott's potential earlier candidacy" exists given that Scott served as chair of New Republican for seven months while the super PAC raised funds that were later spent on Scott's campaign. JA290. Even though FECA and FEC regulations allow such objective evidence to support a candidacy finding, the Statement incorrectly concludes that the FEC would be required to "probe [Scott's] subjective intent" to determine when he became a candidate during his seven months at New Republican PAC. *Id.* Premised solely on that incorrect legal interpretation, the controlling commissioners then purported to invoke "our prosecutorial discretion," claiming that an investigation into Scott's subjective intent would be too costly and "invasive." *Id.*

Two of the three dissenting commissioners who voted for reason-to-believe also issued a statement explaining their votes. JA274-80. They criticized the controlling commissioners' failure to pursue End Citizens United PAC's "well-supported allegations." JA280. As they explained, whether a person has become a candidate turns on the person's "objectively deliberate actions," not subjective intent, and the evidence before the agency shows that Scott "trigger[ed] candidacy months earlier" than his official announcement. JA275-76.

3.    End Citizens United PAC sued the FEC, challenging the dismissal as "contrary to law. JA006. The FEC failed to appear and defend the action, and New Republican intervened. JA097. The district court granted summary judgment for

New Republican PAC. JA097-115. Relying on the split-panel decision in *New Models*, the district court concluded that the FEC's dismissal was unreviewable because the controlling commissioners invoked prosecutorial discretion. JA107-10.

A divided panel of this Court affirmed. *ECU*, 90 F.4th at 1172. The panel majority relied on the split decisions in the *CREW* cases in claiming that "FECA's contrary to law review does not eliminate the Commission's prosecutorial discretion." *Id.* at 1178 (citing *Chaney*, 470 U.S. at 831-32). The majority then found that review was foreclosed even though the controlling commissioners' Statement "provided legal reasons . . . for declining enforcement in addition to invoking prosecutorial discretion." *Id.* at 1180 (internal quotation marks omitted). The divided panel also rejected the argument that the *CREW* cases are not binding because they conflict with earlier D.C. Circuit and Supreme Court rulings. *Id.*

Judge Pillard dissented, explaining that "[t]he majority repeats the mistakes from *Commission on Hope* and *New Models*, which continue to call out for correction." *Id.* at 1188. As Judge Pillard explained, "[i]t is perverse to treat a non-majority's statement of reasons, elicited to facilitate judicial review, as instead its ticket to bypass judicial review altogether." *Id.* at 1189. By doing so, the *CREW* cases "make[] a mockery of the carefully balanced bipartisan structure which Congress has erected." *Id.* (internal quotation marks omitted).

## REASONS FOR GRANTING REHEARING EN BANC

En banc review is reserved for exceptional cases that break from established precedent or present urgent issues meriting the full Court's consideration. Fed. R. App. P. 35(a). The decision here compels rehearing for both reasons. Like the *CREW* cases on which it relies, the decision directly contravenes binding Supreme Court and Circuit precedent and vitiates the statutory enforcement scheme. The full Court's intervention is needed to resolve the deepening conflict created by this line of decisions and restore the effective operation of a vitally important statute.

## I.     Immunizing the Commission's Legal Errors from Review Contravenes FECA and Controlling Precedent.

As affirmed by the Supreme Court in *Akins* and in the long-established law of this Circuit, FEC enforcement dismissals, unlike the nonenforcement decisions of most other agencies, are subject to judicial oversight—because Congress expressly provided for such review in the FEC's governing statute. In nevertheless applying the *CREW* cases to bar review here, the panel decision directly contravenes this authority.

A.     Like the *CREW* decisions it follows, the split-panel opinion rests on a premise flatly contradicted by governing precedent: that FEC dismissal decisions are "control[led]" by *Chaney* and its "presumption" that "an agency's decision not to undertake enforcement" is not reviewable, *Commission on Hope*, 892 F.3d at 439. *See ECU*, 90 F.4th at 1178. As the Supreme Court held in *Akins*, FECA "explicitly

indicates the contrary." 524 U.S. at 26. Therefore, "[a]s the Supreme Court has specifically held, 'reason-to-believe' assessments under [FECA] are expressly excepted from the general presumption that decisions not to enforce the law are unreviewable." *New Models II*, 55 F.4th at 927 (Millett, J., dissenting from denial of rehr'g en banc).

Until "the wrong turn in *Commission on Hope*," *ECU*, 90 F.4th at 1187 (Pillard, J., dissenting), this Circuit's decisions had uniformly recognized the same.

In *DCCC*, the Court rejected the FEC's argument "that deadlocks on the Commission are immunized from judicial review because they are simply exercises of prosecutorial discretion." 831 F.2d at 1133-34 (citing Br. for the FEC at 17-20). In so doing, the Court expressly declined to "confin[e] the judicial check [in § 30109(a)(8)(C)] to cases in which . . . the Commission acts on the merits." *Id.* at 1134-35 & n.5.

Likewise, in *Chamber of Commerce*, the Court affirmed the reviewability of the FEC's "unwillingness to enforce" the law, noting that FECA "is unusual in that it permits a private party to challenge the FEC's decision *not* to enforce," such that "even without a Commission enforcement decision, [administrative respondents] are subject to litigation." 69 F.3d at 603.

Finally, *Orloski*—which articulated the test courts have applied for decades when reviewing whether FEC dismissals are "contrary to law" under

§ 30109(a)(8)—also affirmed that FEC nonenforcement decisions are reviewable. Under the standard it established, an FEC dismissal is contrary to law if it was either based on an impermissible interpretation of the statute *or*, "under a permissible interpretation of the statute, was arbitrary or capricious, or an abuse of discretion." 795 F.2d at 161.

B.    The panel's disregard for *Akins* and Circuit authority is not excused because the *New Models* majority "addressed the same argument." 90 F.4th at 1180. *New Models* did try to justify its radical departure from precedent, but not successfully. The *New Models* majority suggested that *Akins* can be limited to its facts, but that requires ignoring the Supreme Court's clear holding that the presumption of nonreviewability is inapplicable in the FECA context. *Akins*, 524 U.S. at 26. And its assertion that *Akins* can be disregarded because the FEC nonenforcement decision it reviewed "did not invoke enforcement discretion as a basis for dismissal," *New Models*, 993 F.3d at 893, is equally unavailing. Indeed, in its briefing to the Court in *Akins*, the FEC relied on *Chaney*, invoked its "authority to exercise prosecutorial discretion" as the reason plaintiffs lacked a redressable injury, and characterized the underlying administrative decision as "a discretionary judgment." Br. for Pet'r, *FEC v. Akins*, 524 U.S. 11 (No. 96-1590), 1997 WL 523890, 23, 29 (Aug. 21, 1997); Reply Br. for Pet'r, *FEC v. Akins*, 524 U.S. 11 (No. 96-1590), 1997 WL 675443, 9 n.8 (Oct. 30, 1997).

The significant inconsistency and conflict in decisions since *Commission on Hope* also belies the suggestion in *New Models* that its rule "readily conforms with [the Court's] earlier cases." 993 F.3d at 893. *Compare, e.g., Campaign Legal Ctr. and Democracy 21 v. FEC*, 952 F.3d 352, 356 (D.C. Cir. 2020) (declining to decide whether to follow *Commission on Hope* and proceeding to consider the merits of a "discretion[ary]" dismissal), *Lieu v. FEC*, 370 F. Supp. 3d 175, 183 (D.D.C. 2019) (noting that "FECA's express provision for the judicial review of FEC dismissal decisions" rendered *Chaney* "inapposite"), *and CREW v. FEC*, 316 F. Supp. 3d 349, 421-22 (D.D.C. 2018) (same), *aff'd*, 971 F.3d 340 (D.C. Cir. 2020), *with CREW v. Am. Action Network*, 590 F. Supp. 3d 164, 173 (D.D.C. 2022) (dismissing citizen suit on reconsideration of defendant's motion to dismiss following *New Models*, reversing initial ruling that "FEC dismissals based on [prosecutorial] discretion rooted entirely in legal conclusions are reviewable" under *Commission on Hope*), *appeal docketed*, No. 22-7038 (D.C. Cir. Mar. 31, 2022); *Pub. Citizen v. FEC*, 547 F. Supp. 3d 51, 54-55 (D.D.C. 2021) (declining to review FEC dismissal where a single footnote in the controlling statement[3] merely "note[d] that the Commission maintains broad discretion" that it "could" have applied).[4]

---

[3]     *See* Statement of Reasons of Chair Lee Goodman & Comm'rs Caroline C. Hunter and Matthew S. Petersen, MUR 6396 (Crossroads GPS) (Jan. 8, 2014), https://www.fec.gov/files/legal/murs/6396/14044350970.pdf.

[4]     Tellingly, even the FEC itself—at least before *Commission on Hope*— recognized "that when FEC Commissioners purport to invoke prosecutorial

Instead, as multiple members of this Court have recognized, the unbounded rule of nonreviewability first pronounced in *Commission on Hope* conflicts with binding precedent, countermands Congress's directive in section 30109(a)(8), and "opens the door to the dangerously easy evasion of judicial review." *New Models*, 993 F.3d at 905 (Millett, J., dissenting). *See also ECU*, 90 F.4th at 1189 (Pillard, J., dissenting) ("*Commission on Hope* and *New Models* squarely contravene the Supreme Court's and our own views in *Akins*, and multiple other decisions of our circuit affirming the reviewability of the Commission's non-enforcement decisions."); *New Models II*, 55 F.4th at 926 (Millett, J., dissenting from denial of rehr'g en banc) ("As Judge Griffith worried, Judge Pillard predicted, and Judge Edwards has since echoed, the *Commission on Hope* chickens have come home to roost. The court's decision in this case renders for naught statutorily mandated judicial review."); *Democracy 21*, 952 F.3d at 360 (Edwards, J., concurring); *Commission on Hope II*, 923 F.3d at 1142 (Griffith, J., concurring in denial of rehr'g en banc); *Commission on Hope*, 892 F.3d at 442 (Pillard, J., dissenting).

C.   The panel here erroneously embraced and extended the rule of unconditional immunity created by the *CREW* cases, confirming that the decisions cannot be harmonized with FECA or prior controlling precedent. As now extended,

---

discretion in dismissing a complaint, the matter in dispute is subject to judicial review." *Democracy 21*, 952 F.3d at 361 (Edwards, J., concurring) (citing the FEC's briefing in *Commission on Hope*).

the *CREW* cases threaten to shield any Commission decision that utters the phrase "prosecutorial discretion"—however contingent or pretextual the reference, and regardless of what else the decision says—from all scrutiny.

Crucially, the split-panel decision here appears to slam shut the one narrow window left open by *New Models* for finding that an FEC dismissal invoking discretion is not immune from congressionally mandated review. While the *New Models* majority suggested that FECA review would remain available in circumstances where the controlling commissioners "reference their merits analysis as a ground for exercising prosecutorial discretion," *New Models II*, 55 F.4th at 920-21 (Rao, J., concurring in denial of rehearing en banc) (citation omitted), the decision here reveals how little of the statutory review mechanism that caveat preserves.

Even assuming it were possible, as the panel majority believed, to pinpoint any discretionary concerns in the Statement that theoretically stand apart from the commissioners' overarching merits analysis, 90 F.4th at 1178-79, that still does not justify shielding their *legal* conclusions—the only aspect of the decision End Citizens United PAC seeks to challenge—from review. *Cf. New Models*, 993 F.3d at 905 (Millett, J., dissenting).

The mere act of undertaking this fraught interpretive exercise only drives home its conflict with *Akins* and Circuit authority. It is a bedrock principle of administrative law that an agency's "formal action, rather than its discussion . . . is

dispositive" of whether the action is reviewable. *I.C.C. v. Bhd. of Locomotive Engineers*, 482 U.S. 270, 281 (1987). The formal agency action taken here was the dismissal of End Citizens United PAC's complaint following a failed reason-to-believe vote, and the statute makes that action reviewable. Whether an FEC dismissal withstands review, or what degree of deference its decisionmaking is due, are altogether different questions. But it cannot be the case, as the panel majority held, that an FEC dismissal escapes statutorily directed review wherever some notionally independent, "discretionary factors" can be gleaned from an otherwise reviewable legal analysis. 90 F.4th at 1179.

Indeed, *New Models* inappropriately authorizes courts to guess, when reviewing an FEC decision based on multiple grounds, what the agency would do on remand if its legal basis for dismissal is held invalid. As in *Akins*, however, "we cannot know," and the panel was not permitted to assume, "that the FEC would have exercised its prosecutorial discretion in this way" if the commissioners' dispositive legal conclusions were held contrary to law. 524 U.S. at 25. The role of the courts is to "correct[] a legal error—if error is committed—in the agency decision," provided the error is "one upon which the agency decision rests." *Akins v. FEC*, 101 F.3d 731, 738 (D.C. Cir. 1996) (citing *SEC v. Chenery Corp.*, 332 U.S. 194, 196-97 (1947)). Because of the *CREW* decisions, that judicial backstop is now routinely unavailable.

\* \* \*

The rule of automatic and absolute nonreviewability heralded by the *CREW* decisions and embraced by the panel here cannot be squared with FECA's text, the Supreme Court's holding in *Akins*, or longstanding Circuit precedent. As confirmed in *Akins* and controlling D.C. Circuit decisions, the Act expressly subjects Commission nonenforcement decisions to judicial scrutiny under a "contrary to law" standard. *See* 52 U.S.C. § 30109(a)(8)(A), (C). The *CREW* panels were not authorized to overrule this authority.

## II.    The Split-Panel Decision Vitiates FECA's Enforcement Scheme and the Critically Important Interests It Serves.

FECA's review provision is an integral component of the statutory enforcement scheme. Judicial review provides the "countermeasure to otherwise predictable deadlock at the Commission," *ECU*, 90 F.4th at 1187 (Pillard, J., dissenting), and safeguards the vital transparency and anti-corruption laws the FEC is charged to enforce. The statute cannot be reconciled with a rule that empowers a partisan-aligned non-majority bloc to unilaterally preclude review of their decisions—including decisions, as in this case, based on extensive legal analysis and involving "the most serious violations of federal campaign finance law"—by summoning the "magic words" of enforcement discretion. *Commission on Hope II*, 923 F.3d 1141, 1144 (D.C. Cir. 2019) (Pillard, J., dissenting from denial of rehr'g en banc).

The *CREW* rulings have already had profoundly damaging effects on the operation of federal campaign finance law. Since *Commission on Hope*, commissioners "have routinely cited 'prosecutorial discretion' to stymie judicial scrutiny of apparently serious FECA violations." *ECU*, 90 F.4th at 1184. And, predictably, the impetus to tack on a "discretionary" ground for dismissal and thereby defeat judicial review has proven most irresistible in cases where the controlling bloc lacks a defensible legal basis for refusing to proceed. *See, e.g.*, *id.* Worse still, the rulings allow partisan FEC minorities to entrench impermissible statutory interpretations without recourse to the judicial check that Congress authorized. "[T]hese legal pronouncements, while walled off from judicial review, directly influence the conduct of regulated parties, who regularly rely on and invoke them in subsequent proceedings before the Commission." *New Models II*, 55 F.4th at 931 (Millett, J., dissenting from denial of rehr'g en banc).

The panel majority's endorsement of an unqualified barrier to review thus perversely shields the very legal interpretations that are most in need of judicial correction. Under *New Models*, the panel held the controlling commissioners' unsustainable legal interpretations beyond all scrutiny. The commissioners' analysis relied on an erroneous legal test that contravenes the relevant standard, and indeed, opens a massive and readily exploited loophole in FECA's candidate reporting requirements and contribution limits. Letting these legal errors go unchallenged

seriously frustrates FECA's core purpose of informing voters about "where political campaign money comes from and how it is spent," *Buckley v. Valeo*, 424 U.S. 1, 66 (1976) (per curiam), and is precisely the kind of impermissible statutory interpretation that FECA's judicial review provision exists to correct. By refusing to review the adequacy of the controlling commissioners' interpretations of FECA, the panel decision leaves that faulty legal analysis in place—imperiling FECA's requirements and the voting public's right to know how political campaign money is raised and spent.

The split-panel decision, like the *CREW* cases, is irreconcilable with the balanced statutory scheme that Congress devised. In allowing one partisan non-majority faction of commissioners to dictate the law's requirements and thwart any accountability for their decisions, these rulings "turn[] the rule of law upside down and render[] the statutory provision for review of dismissal decisions a dead letter." *New Models II*, 55 F.4th at 932 (Millett, J., dissenting from denial of rehr'g en banc). The federal campaign finance laws are too important to let this damaging line of decisions stand uncorrected.

## CONCLUSION

For the foregoing reasons, this Court should grant rehearing en banc.


Dated**:** February 20, 2024

Respectfully submitted,

/s/ *Kevin P. Hancock*

Adav Noti
Kevin P. Hancock
Alexandra Copper
CAMPAIGN LEGAL CENTER ACTION
1101 14th Street, NW, St. 400
Washington, D.C. 20005
(202) 736-2000
khancock@campaignlegalcenter.org

*Counsel for Petitioner*

**CERTIFICATE OF COMPLIANCE**

This document complies with the word limit of Fed. R. App. P. 27(d)(2)(A) because, excluding the parts of the document exempted under Fed. R. App. P. 32(f), this document contains 3,881 words.

This filing complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this response has been prepared using Microsoft Office Word 2016 in Times New Roman 14-point font.

*/s/ Kevin P. Hancock*
Kevin P. Hancock

## CERTIFICATE OF SERVICE

I certify that on February 20, 2024, I electronically filed this brief with the Clerk of Court for the United States Court of Appeals for the District of Columbia Circuit using the appellate CM/ECF system, thereby serving all persons required to be served.

*/s/ Kevin P. Hancock*
Kevin P. Hancock

**ADDENDUM**

1.  Certificate as to Parties, Ruling, Related Cases, and Amici

2.  Corporate Disclosure Statement

3.  Panel Decision

<h1 style="text-align:center">CERTIFICATE AS TO PARTIES,<br>RULINGS, AND RELATED CASES</h1>

Pursuant to Circuit Rule 28(a)(1), Petitioner End Citizens United PAC hereby certifies as follows:

**(A) Parties and Amici.** Petitioner is Plaintiff-Appellant End Citizens United PAC. End Citizens United PAC is a political action committee whose mission is to get big money out of politics and protect the right to vote by working to elect reform-oriented politicians, pass meaningful legislative reforms, and elevate electoral issues in the national conversation.

The Federal Election Commission is the defendant in the district court but defaulted and has not appeared in the district court or in this Court. New Republican PAC was granted leave by the district court to intervene in the action as a defendant and is an appellee in this Court.

There were no *amici curiae* in the district court. Citizens for Responsibility and Ethics in Washington appeared as *amicus curiae* in this Court in support of Appellant End Citizens United PAC.

**(B) Rulings Under Review.** End Citizens United PAC appeals the September 16, 2022 memorandum opinion (Doc. 36) and order (Doc. 37) of the U.S. District Court for the District of Columbia (Leon, J.) granting Defendant-Intervenor New Republican PAC's Cross-Motion for Summary Judgment and denying Plaintiff End Citizens United PAC's Motion for Default Judgment, or, in the Alternative, for

d

Summary Judgment. The September 16, 2022 opinion is not published in the federal reporter but is available at 2022 WL 4289654 and attached to End Citizens United PAC's Notice of Appeal, which was entered on this Court's docket on October 20, 2022.

**(C) Related Cases.** The appealed ruling has not previously been before this Court or any other court. There are no related cases pending in this Court or any other court of which counsel are aware.

## CORPORATE DISCLOSURE STATEMENT

Pursuant to D.C. Circuit Rule 35(c), Petitioner End Citizens United PAC submits its corporate disclosure statement.

(a) End Citizens United PAC certifies that it has no parent companies and no publicly held company with a 10% or greater ownership interest.

(b) End Citizens United PAC is a political action committee whose mission is to get big money out of politics and protect the right to vote by working to elect reform-oriented politicians, pass meaningful legislative reforms, and elevate electoral issues in the national conversation.

**PANEL DECISION**

# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued April 26, 2023        Decided January 19, 2024

No. 22-5277

END CITIZENS UNITED PAC,
APPELLANT

v.

FEDERAL ELECTION COMMISSION AND NEW REPUBLICAN
PAC,
APPELLEES

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:21-cv-02128)

———

*Kevin P. Hancock* argued the cause for appellant. With
him on the briefs were *Adav Noti*, *Alexandra Copper*, and
*Allison Walter*. *Molly Danahy* entered an appearance.

*Stuart C. McPhail* and *Adam J. Rappaport* were on the
brief for *amicus curiae* Citizens for Responsibility and Ethics
in Washington in support of appellant.

*Jason B. Torchinsky* argued the cause for intervenor-
appellee New Republican PAC. With him on the brief were

2

*Edward M. Wenger*, *Phillip M. Gordon*, and *Kenneth C. Daines*.

Before: PILLARD, KATSAS, and RAO, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* RAO.

Opinion concurring in part and dissenting in part filed by *Circuit Judge* PILLARD.

RAO, *Circuit Judge*: This case concerns the Federal Election Commission's dismissal of two administrative complaints alleging that New Republican PAC and Senator Rick Scott violated various election laws. The Commission dismissed the first complaint on the ground of prosecutorial discretion, and it dismissed the second after concluding the record provided no "reason to believe" the alleged violation occurred. End Citizens United PAC filed suit, challenging both dismissals. The district court dismissed the suit, and we affirm. The Commission's first dismissal is unreviewable because it was based on prosecutorial discretion, and the second dismissal was not contrary to law.

I.

A.

New Republican is a "Super PAC," meaning a political action committee "that makes only independent expenditures and cannot contribute to candidates." *See McCutcheon v. FEC*, 572 U.S. 185, 193 n.2 (2014) (plurality opinion). Rick Scott became New Republican's chairman in May 2017 and formally stepped down in December 2017. He officially declared his run for Senate in April 2018.

3

End Citizens United filed two administrative complaints with the Commission, alleging New Republican and Scott[1] violated several requirements of the Federal Election Campaign Act of 1971 ("FECA"). *See* Pub. L. No. 92-225, 86 Stat. 3 (codified as amended at 52 U.S.C. § 30101 *et seq.*). According to End Citizens United, before officially declaring his Senate run, Scott began informal campaign activities and used New Republican's resources to support his nascent candidacy. He also allegedly continued to exert control over New Republican into 2018—well after his chairmanship ended. He purportedly did this by fundraising for New Republican, participating in conference calls, and interacting with political allies connected to the PAC, among other things. Immediately after Scott officially declared his candidacy in April 2018, New Republican revamped its website and issued a press release to announce its "focus[] on the election of Rick Scott in the race for Florida United States Senate."

Based on this timeline, End Citizens United's first complaint maintained that Scott became a "candidate" in May 2017, the same month he became chairman of New Republican, and that he failed to register his campaign until nearly a year later. Complaint at 1–5, FEC Matter Under Review 7370 ("Complaint One") (Apr. 23, 2018); *see also* 52 U.S.C. § 30101(2) (defining "candidate"); 11 C.F.R. § 100.72(a) (outlining permissible activities and reporting requirements for individuals "determining whether … [to] become a candidate"). As a consequence of the alleged failure to timely register his campaign, Scott failed to make the necessary filings and reports to the FEC. *See* 52 U.S.C. §§ 30102–04. The complaint also alleged that New Republican

---

[1] End Citizens United also alleged Scott's campaign had violated FECA. For purposes of this case, we do not distinguish between Scott and his campaign because the distinction is not relevant here.

4

unlawfully raised and spent funds while under Scott's control, because all candidate controlled entities are subject "to [FECA's] limitations, prohibitions, and reporting requirements." *Id.* § 30125(e)(1)(A).

The second complaint alleged unlawful coordination between Scott and New Republican. Complaint at 1–8, FEC Matter Under Review 7496 ("Complaint Two") (Sept. 14, 2018). New Republican launched two television commercials, in May and June 2018, against Scott's opponent in the Senate race. End Citizens United alleged that New Republican had impermissibly contributed to Scott's campaign by coordinating with Scott to purchase the commercials. *See* 52 U.S.C. § 30116(a)(7)(B)(i), (f) (specifying that, when a Super PAC makes an expenditure "in cooperation, consultation, or concert[] with" a candidate, that expenditure "shall be considered" an impermissible contribution even if the Super PAC never transferred funds directly to the candidate); *see also* 11 C.F.R. § 109.21 (defining "coordinated communication"). In support of this claim, End Citizens United emphasized that Scott had continued his involvement with New Republican for months after formally stepping down, including during the period when the advertisements were booked and paid for. Scott and New Republican denied the allegations in both complaints.

B.

After reviewing the complaints and responses, the Commission's general counsel recommended the Commission find "reason to believe" Scott and New Republican committed some of the Complaint One violations. *See* 11 C.F.R. § 111.7(a). With respect to the Complaint Two coordination claim, the general counsel relied on the sworn statement of Blaise Hazelwood, who took over New Republican after

5

Scott's departure. Hazelwood stated that she had directed the advertisement placements without coordinating with Scott or his campaign. The general counsel noted that End Citizens United's complaint almost exclusively relied on the timing of the campaign commercials, inferring coordination from the fact that the commercials aired shortly after Scott stepped down from New Republican and formally announced his candidacy. Aside from this "mere temporal relationship," however, the general counsel concluded there was "no information available suggesting" coordination had occurred. The general counsel recommended the Commission take no action on Complaint Two and wait to see whether the recommended investigation into Complaint One uncovered facts that would provide reason to believe New Republican had unlawfully coordinated with Scott.

Under FECA, the Commission will begin an investigation only if four commissioners determine there is "reason to believe" a violation has occurred. 52 U.S.C. § 30109(a)(2). "[A]n affirmative vote of four commissioners is required for the agency to initiate enforcement proceedings." *Citizens for Resp. & Ethics in Wash. v. FEC* ("*New Models*"), 993 F.3d 880, 883 (D.C. Cir. 2021); *see* 52 U.S.C. § 30109(a)(2). A split vote of the six commissioners means no investigation may go forward. *See Combat Veterans for Cong. PAC v. FEC*, 795 F.3d 151, 153 (D.C. Cir. 2015). Here, three commissioners voted to find reason to believe the violations had occurred, and the other three voted to dismiss both complaints. Lacking the four votes necessary to begin an investigation, the Commission voted five to one to close the file and dismiss the complaints.

The three commissioners voting against enforcement, the so-called controlling commissioners, issued a Statement of

6

Reasons.[2] Statement of Reasons of Vice Chair Allen Dickerson and Commissioners Sean J. Cooksey and James E. "Trey" Trainor III, FEC Matters Under Review 7370 and 7496 ("Statement of Reasons") (July 21, 2021). With respect to Complaint One, they offered legal and evidentiary grounds for dismissal. They also explicitly "invoked … prosecutorial discretion pursuant to *Heckler v. Chaney*," concluding it would be unwise to "authoriz[e] an expensive and resource-consuming investigation while the Commission is … working through a substantial backlog of cases." *Id.* at 10 (citing *Heckler v. Chaney*, 470 U.S. 821 (1985)). As to Complaint Two, the controlling commissioners offered two independent reasons for dismissal. First, they suggested the coordination allegation could not go forward without "a threshold finding" that Scott or New Republican had violated FECA's campaign registration, filing, reporting, or spending requirements, as alleged in Complaint One. *Id.* at 2 n.2. Second, they incorporated by reference the general counsel's evidentiary analysis, agreeing the record did not support a reason to believe coordination had occurred. *Id.* at 5 n.25.

End Citizens United filed suit in 2021, challenging the Commission's dismissals as "contrary to law." *See* 52 U.S.C. § 30109(a)(8)(C). The Commission did not defend its dismissals in district court. After allowing New Republican to intervene as a defendant, the district court granted summary judgment in New Republican's favor. *End Citizens United*

---

[2] The commissioners voting against enforcement are called "controlling [c]ommissioners," and their stated reasons are "treated as if they were expressing the Commission's rationale for dismissal." *New Models*, 993 F.3d at 883 n.3 (cleaned up); *see also Democratic Cong. Campaign Comm. v. FEC*, 831 F.2d 1131, 1132 (D.C. Cir. 1987) (establishing the requirement for the controlling commissioners to issue a statement of reasons).

7

*PAC v. FEC*, No. 21-2128, 2022 WL 4289654, at *1 (D.D.C. Sept. 16, 2022). The district court concluded the Commission's dismissal of the first complaint was unreviewable because that dismissal was based in part on prosecutorial discretion. *Id.* at *5 (citing *New Models*, 993 F.3d at 889). And it concluded the Commission's dismissal of the second complaint was reviewable but not contrary to law. *Id.* at *6–7. End Citizens United timely appealed. Our review is de novo. *Citizens for Resp. & Ethics in Wash. v. FEC* ("*Commission on Hope*"), 892 F.3d 434, 440 (D.C. Cir. 2018).

## II.

End Citizens United argues the dismissal of Complaint One was contrary to law because the controlling commissioners erroneously interpreted FECA to require a showing of Scott's "subjective intent" to become a candidate. And, it argues, the Complaint Two dismissal was also contrary to law because the controlling commissioners applied FECA to the facts in an arbitrary and irrational way.

FECA allows a court to "declare that the dismissal of [a] complaint … is contrary to law." 52 U.S.C. § 30109(a)(8)(C). Under our precedents, a dismissal is "contrary to law" if "(1) the FEC dismissed the complaint as a result of an impermissible interpretation of [FECA] … or (2) if the FEC's dismissal of the complaint, under a permissible interpretation of the statute, was arbitrary or capricious, or an abuse of discretion."[3] *Orloski v. FEC*, 795 F.2d 156, 161 (D.C. Cir.

---

[3] Since *Orloski v. FEC*, this circuit has included arbitrary and capricious review, as well as abuse of discretion review, under FECA's "contrary to law" standard. 795 F.2d 156, 161 (D.C. Cir. 1986). But prior decisions did not conflate these different forms of review. For instance, the Supreme Court explained that given the

8

1986). To the extent we review dismissals for arbitrariness, our review is "[h]ighly deferential," "presumes the validity of agency action[,] and permits reversal only if the agency's decision is not supported by substantial evidence, or the agency has made a clear error in judgment." *Hagelin v. FEC*, 411 F.3d 237, 242 (D.C. Cir. 2005) (cleaned up); *accord Campaign Legal Ctr. & Democracy 21 v. FEC*, 952 F.3d 352, 357 (D.C. Cir. 2020) (per curiam).

---

discretionary enforcement powers of the Commission, "Congress wisely provided that the Commission's dismissal of a complaint should be reversed *only* if 'contrary to law.'" *FEC v. Democratic Senatorial Campaign Comm.*, 454 U.S. 27, 37 (1981) (cleaned up) (emphasis added); *see also In re Carter-Mondale Reelection Comm., Inc.*, 642 F.2d 538, 542 (D.C. Cir. 1980) (per curiam) (accepting the parties' "agree[ment] that the standard of review was whether the FEC has acted arbitrarily, capriciously, or contrary to law," without opining on whether that stipulation was legally correct); *Orloski*, 795 F.2d at 161 (citing these two cases).

We have since suggested that *Orloski* was attempting to harmonize FECA with the Administrative Procedure Act's judicial review provisions, which allow for arbitrary and capricious review. *See Comm'n on Hope*, 892 F.3d at 437 & n.3 (explaining the APA, 5 U.S.C. § 559, allows a later statute to modify its judicial review provisions only expressly). The APA's judicial review framework, however, does not apply to agency actions "committed to agency discretion by law." 5 U.S.C. § 701(a)(2). And FECA commits nonenforcement decisions to the Commission's discretion except to the extent that they are "contrary to law." *See New Models*, 993 F.3d at 884. Neither *Orloski* nor the cases following it have explained why the APA's arbitrary and capricious and abuse of discretion standards of review should be imported into FECA's "contrary to law" standard. Until reconsideration by the full court, *Orloski* is binding precedent, and we follow it here.

9

FECA's contrary to law review does not eliminate the Commission's prosecutorial discretion. "[T]he [Administrative Procedure Act] and longstanding … precedents rooted in the Constitution's separation of powers recognize that enforcement decisions are not ordinarily subject to judicial review." *New Models*, 993 F.3d at 888; *see also Chaney*, 470 U.S. at 831–32. And "[t]he Supreme Court in *Akins* recognized that the Commission, like other Executive agencies, retains prosecutorial discretion." *Citizens for Resp. & Ethics in Wash. v. FEC*, 475 F.3d 337, 340 (D.C. Cir. 2007) (citing *FEC v. Akins*, 524 U.S. 11, 25 (1998)). It follows that the Commission's "exercise of its prosecutorial discretion cannot be subjected to judicial scrutiny." *Comm'n on Hope*, 892 F.3d at 439. Furthermore, we recently reiterated that a Commission dismissal is unreviewable if it "turn[s] in whole or in part on enforcement discretion." *New Models*, 993 F.3d at 894. A dismissal is reviewable "only if the decision rests *solely* on legal interpretation." *Id.* at 884; *see also Akins*, 524 U.S. at 25–26 (explaining that "[i]f a reviewing court agrees that the agency misinterpreted the law, it will set aside the agency's action and remand the case" and that the petition can seek only "a declaration that the FEC's dismissal … was unlawful").

A.

The Commission's dismissal of the first complaint is an unreviewable exercise of its prosecutorial discretion. As End Citizens United concedes, the controlling commissioners expressly invoked their prosecutorial discretion when dismissing the complaint. They cited *Chaney* repeatedly, discussed the time and expense an investigation would involve, and mentioned the Commission's "substantial backlog of cases." Statement of Reasons at 2, 10. Prioritizing particular cases and considering limited time and resources are quintessential elements of prosecutorial discretion. When the

10

Commission's dismissal rests even in part on prosecutorial discretion, it is not subject to judicial review. *New Models*, 993 F.3d at 884, 893–95; *see also Comm'n on Hope*, 892 F.3d at 439.

Resisting the straightforward conclusion from our caselaw, End Citizens United asserts the invocation of prosecutorial discretion is not determinative because the controlling commissioners relied on an interpretation of FECA. The controlling commissioners concluded that whether Scott violated FECA would turn on his "subjective intent" during the relevant timeframe—an apparent reference to whether Scott formed an intention to launch a Senate campaign while he was the chairman of New Republican. Statement of Reasons at 10. Because the dismissal rested in part on this legal analysis, End Citizens United contends we can review whether the dismissal was contrary to law.

We have repeatedly declined to review dismissals in similar circumstances because we will not "carve out the Commission's statutory interpretation from its exercise of enforcement discretion" in order to review a dismissal. *New Models*, 993 F.3d at 886; *Comm'n on Hope*, 892 F.3d at 442 ("The law of this circuit rejects the notion of carving reviewable legal rulings out from the middle of non-reviewable actions.") (cleaned up). The Supreme Court has similarly rejected "the principle that if [an] agency gives a 'reviewable' reason for otherwise unreviewable action, the action becomes reviewable." *ICC v. Bhd. of Locomotive Eng'rs*, 482 U.S. 270, 283 (1987). Nonenforcement decisions often turn on both discretionary factors and legal determinations, but a dismissal is entirely unreviewable if it depends even in part on

11

enforcement discretion.[4] *See Chaney*, 470 U.S. at 831 (acknowledging unreviewable enforcement decisions "often involve[] a complicated balancing of a number of factors").

End Citizens United's approach flies in the face of binding precedent by demanding this court review nonenforcement

---

[4] Unable to rebut this established caselaw, the dissent maintains that some of the "claims" in Complaint One were dismissed on the merits, not on prosecutorial discretion. Dissenting Op. 13–14. This splicing of the Statement of Reasons fails for multiple reasons. To begin with, End Citizens United did not raise this argument on appeal and repeatedly recognizes that the controlling commissioners relied on prosecutorial discretion to dismiss the first complaint. *See, e.g.*, Appellant's Brief at 5. "[W]e rely on the parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present." *United States v. Sineneng-Smith*, 140 S. Ct. 1575, 1579 (2020) (cleaned up).

In any event, on the merits, the dissent's interpretation misreads the Statement of Reasons. When concluding the Statement, the controlling commissioners explicitly state, "[u]ltimately, we determined that this Matter merited the invocation of our prosecutorial discretion." Statement of Reasons at 10. And, contrary to the dissent, "this Matter" was previously defined to include "the *complaints* received by the Commission on April 23, 2018," *id.* at 2 (emphasis added), which is all of Complaint One, not just the "filing" claims. Moreover, the Statement does not clearly separate its analysis of the "soft money" claims and the "filing" claims. Rather, the controlling commissioners explain the claims are inextricably connected because "[u]nder [FECA], New Republican can commit a soft money violation only if Scott is a candidate. But if Scott was not a candidate, then there can be no soft money violation." *Id.* at 7. The discussion of the "soft money" issue was predicated on "assuming *arguendo* that Scott had become a candidate at some point prior to his formal announcement." *Id.* But on that threshold question, and therefore with respect to all the claims in "this Matter," the controlling commissioners invoked prosecutorial discretion.

12

decisions that turn even in part on legal interpretation. But the analysis in the Statement of Reasons, which discussed legal reasons as well as prosecutorial discretion, cannot be distinguished from the statement we found unreviewable in *New Models*. That statement, like the one at issue here, "provided legal reasons … for declining enforcement" in addition to invoking prosecutorial discretion. *New Models*, 993 F.3d at 885–86. There are no grounds for distinguishing the two cases, so we cannot review the dismissal.

End Citizens United also explicitly asks us to depart from *Commission on Hope* and *New Models* because they conflict with earlier decisions. We addressed the same argument at length in *New Models*, explaining why that decision was consistent with the text and structure of FECA, as well as with the cases on which End Citizens United now relies. *Id.* at 892–95 (explaining consistency with *Akins*, 524 U.S. 11; *Democratic Cong. Campaign Comm. v. FEC*, 831 F.2d 1131 (D.C. Cir. 1987); *Chamber of Com. v. FEC*, 69 F.3d 600 (D.C. Cir. 1995); and *Orloski*, 795 F.2d 156). *Commission on Hope* and *New Models* accord with our prior case law and are binding on this panel.

Our dissenting colleague similarly seeks to relitigate these settled decisions.[5] In FECA, Congress specifically "required

---

[5] A judge's disagreement with settled law does not make it any less settled. This court has consistently followed *New Models* and *Commission on Hope*. *See, e.g.*, *Campaign Legal Ctr. v. FEC*, 22-5339, 2024 WL 57355, at *11 (D.C. Cir. Jan. 5, 2024); *see also End Citizens United PAC v. FEC*, 69 F.4th 916, 920–21 (D.C. Cir. 2023). And we have twice denied full court rehearing on the issue. *See Citizens for Resp. & Ethics in Wash. v. FEC* ("*Commission on Hope II*"), 923 F.3d 1141, 1142 (D.C. Cir. 2019); *Citizens for Resp. & Ethics in Wash. v. FEC* ("*New Models II*"), 55 F.4th 918, 919 (D.C. Cir. 2022).

13

the Commission to clear a series of bipartisan vetogates before commencing an enforcement action." *Citizens for Resp. & Ethics in Wash. v. FEC* ("*New Models II*"), 55 F.4th 918, 920 (D.C. Cir. 2022) (Rao, J., concurring in denial of rehearing en banc). This means, of course, that three commissioners may block the investigation and enforcement of a complaint.[6] Unable to abide the "Commission's passivity," the dissent envisions a dynamic role for the courts to encourage, prompt, and prise open the courthouse doors to the enforcement of campaign finance laws. Dissenting Op. 11. When the Commission invokes prosecutorial discretion, the dissent sees this as an attempt to "evade the stimulus to move forward to enforce the law." *Id.* at 3. Moreover, "[i]t is the court's role to detect statutory misreading and thereby prod a reluctant FEC to act." *Id.* at 7. And it is apparently also the court's role to determine whether a complaint is "legally sufficient to proceed." *Id.* at 12.

Contrary to the dissent's assertions, the statute provides only a modest role for the courts in determining whether a

---

[6] The dissent maintains the Commission may rely on prosecutorial discretion only when four commissioners agree. *See* Dissenting Op. 9–11. Yet no provision in FECA requires four votes to dismiss a complaint. *See New Models*, 993 F.3d at 891 & n.10. In fact, then-Judge Ruth Bader Ginsburg specifically emphasized that when the Commission "deadlocks and for that reason dismisses a complaint," the dismissal is judicially reviewable. *Democratic Cong. Campaign Comm.*, 831 F.2d at 1132 (cleaned up). Judge Ginsburg highlighted that although a 6-0 decision "might represent a firmer exercise of prosecutorial discretion," the 6-0 decision and a deadlocked one were both reviewable because "we resist confining the judicial check to cases in which … the Commission 'act[s] on the merits.'" *Id.* at 1134. The dissent agrees that Commission deadlocks are reviewable, and nothing in our caselaw suggests we must turn a blind eye to the invocation of prosecutorial discretion in a deadlock dismissal.

14

dismissal or failure to act is "contrary to law." *See* 52 U.S.C. § 30109(a)(8)(C). As we have long recognized, the Commission, "not a court of review," must "serve as the primary decisionmaker in the area Congress has committed … to the FEC's charge." *Democratic Cong. Campaign Comm.*, 831 F.2d at 1133; *see also FEC v. Democratic Senatorial Campaign Comm.*, 454 U.S. 27, 37 (1981) (explaining the Commission has the "sole discretionary power to determine in the first instance whether or not a civil violation of [FECA] has occurred") (cleaned up). When the Commission cannot garner four votes for an investigation, and dismissal of the complaint turns on prosecutorial discretion, there is simply no legal reasoning to review. FECA does not confer on the courts a general power to enforce the law, which instead belongs to the Commission in the exercise of its executive power.

Although the district court correctly held the dismissal of Complaint One was not reviewable because the Commission's decision rested in part on prosecutorial discretion, the court mistakenly characterized this as a jurisdictional issue. The non-reviewability of prosecutorial discretion under *Chaney* is not jurisdictional; rather, it deprives the plaintiff of a cause of action. *Oryszak v. Sullivan*, 576 F.3d 522, 524–26 (D.C. Cir. 2009). We therefore modify the district court's judgment and affirm.

B.

1.

The dismissal of Complaint Two is reviewable. Without any reliance on prosecutorial discretion, the controlling commissioners offered two legal determinations to support the dismissal, and we review these conclusions under the contrary to law standard. The first reason for dismissal was that if none

15

of the "threshold" violations alleged in Complaint One had occurred, then illegal coordination (as alleged in Complaint Two) also could not have occurred as a matter of law. Statement of Reasons at 2 n.2. That was "a legal determination not committed to the agency's unreviewable discretion." *New Models*, 993 F.3d at 884–85 (cleaned up). The second reason for dismissal was that there was not enough evidence to find reason to believe a violation of FECA had occurred. Statement of Reasons at 5 n.25.

Assessing whether certain acts constitute FECA violations and whether the facts in the record provide reason to believe a violation occurred are treated as judicially reviewable under the contrary to law standard.[7] *See Hagelin*, 411 F.3d at 242–44 (reviewing the FEC's determination that there was insufficient evidence for a reason to believe finding); *Orloski*, 795 F.2d at 167 (same).

Under our precedents, a dismissal is contrary to law if it misinterprets the statute, is arbitrary or capricious, or is an abuse of discretion. *See, e.g.*, *Hagelin*, 411 F.3d at 242. This review is "extremely deferential" when the Commission finds no reason to believe a violation has occurred. *Orloski*, 795 F.2d at 167; *see Hagelin*, 411 F.3d at 242 (rejecting the argument that "a less deferential standard of review" applies to reason to believe dismissals and observing "we have held just the

---

[7] We reject New Republican's suggestion in passing that—because the first complaint was dismissed on the basis of prosecutorial discretion—the dismissal of the second complaint is also unreviewable. Enforcement discretion not to pursue one complaint does not necessarily apply to another complaint, even when multiple dismissals are explained in a single statement of reasons. *See* 52 U.S.C. § 30109(a)(8)(C) ("In any proceeding under this paragraph the court may declare that *the dismissal of the complaint* or the failure to act is contrary to law.") (emphasis added).

16

opposite"). Commission dismissals at the reason to believe stage are highly context specific and involve detailed consideration of the record, so we will not lightly disturb them.

2.

The controlling commissioners found no reason to believe there was a violation of FECA and, therefore, declined to investigate the allegations made in Complaint Two. The controlling commissioners based their dismissal on the general counsel's report, which "customarily provides the basis for [the Commission's] action" for purposes of judicial review. *Hagelin*, 411 F.3d at 239 (cleaned up). The report referred to Hazelwood's sworn assertion that, as the new chairwoman of New Republican, she had placed the television advertisements without coordinating with Scott or his campaign. That conclusion comported with the record, especially given Complaint Two's heavy reliance on the "mere temporal relationship" between Scott's leaving New Republican and the placement of the commercials. The general counsel also pointed to the lack of other evidence suggesting coordination. At this threshold stage, the Commission was voting on whether to begin an investigation, and "[b]efore it may act, the Commission must find 'reason to believe' that a violation of [FECA] has occurred." *Combat Veterans*, 795 F.3d at 153 (quoting 52 U.S.C. § 30109(a)(2)). Relying on the record and the determinations of the general counsel, the controlling commissioners reasonably dismissed Complaint Two.

End Citizens United raises various objections, primarily attempting to show the dismissal of Complaint Two was contrary to law because it was inadequately reasoned. End Citizens United first suggests the controlling commissioners should have offered a more detailed explanation rather than relying on the general counsel's findings. But where the

17

controlling commissioners' "reliance on the General Counsel's recommendation and analysis of the relevant statutory provisions [is] sufficiently reasonable to be accepted," this court "will not disturb their decision." *Democracy 21*, 952 F.3d at 358 (cleaned up). Second, End Citizens United notes the general counsel doubted Hazelwood's credibility on some points. These concerns, however, do not undermine the fact that the general counsel did not doubt Hazelwood's statements about the television advertisements that were the subject of the coordination claim. And the controlling commissioners reasonably concluded the credibility of Hazelwood's statements was bolstered by the fact she made them under penalty of perjury.

Third, End Citizens United points out the general counsel's ultimate recommendation was to defer action on the second complaint rather than dismissing it outright. But the general counsel also concluded there was insufficient evidence to support a reason to believe finding for the second complaint. The general counsel's additional recommendation to defer action assumed the Commission would investigate the first complaint allegations, which might, in turn, uncover evidence of unlawful coordination. But the controlling commissioners correctly recognized that their dismissal of the first complaint foreclosed any further investigation, which meant no additional facts would come to light. And as already discussed, the record did not otherwise provide reason to believe a coordination violation occurred. The controlling commissioners accordingly voted to dismiss for insufficient evidence. That was both reasonable and lawful.

Finally, End Citizens United presses a more conventional contrary to law challenge, faulting the controlling commissioners for their apparent view that a coordination violation was impossible as a matter of law unless at least one

18

"threshold" Complaint One violation also occurred. We need not address this parallel reason for dismissal. Even if the controlling commissioners were wrong to treat a Complaint One violation as a threshold issue, End Citizens United has not carried its "burden to demonstrate prejudicial error." *Jicarilla Apache Nation v. U.S. Dep't of Interior*, 613 F.3d 1112, 1121 (D.C. Cir. 2010). The APA directs courts to take "due account … of the rule of prejudicial error," and that principle applies in this context. 5 U.S.C. § 706; *Comm'n on Hope*, 892 F.3d at 437 (explaining the APA continues to apply absent a clear statement to the contrary). "[W]hen an agency relies on multiple grounds for its decision, some of which are invalid, we may nonetheless sustain the decision as long as one is valid and the agency would clearly have acted on that ground even if the other were unavailable."[8] *Bally's Park Place, Inc. v. NLRB*, 646 F.3d 929, 939 (D.C. Cir. 2011) (cleaned up).

As already discussed, the three controlling commissioners determined there was no reason to believe impermissible coordination had occurred. With a deadlocked Commission and short of the four votes necessary for an investigation, dismissal was required under FECA. *See Combat Veterans*, 795 F.3d at 153; *see also Public Citizen, Inc. v. FERC*, 839 F.3d 1165, 1170 (D.C. Cir. 2016) (explaining that, unlike in the context of FERC deadlocks, FECA "compels [the] FEC to dismiss complaints in deadlock situations").

---

[8] End Citizens United also asserts the controlling commissioners' evidentiary conclusion cannot have been an independent basis for dismissal because their discussion cross-referenced the discussion about "threshold" violations. But the failure to find reason to believe was sufficient for dismissal as a matter of law, and a mere cross-reference does not change that conclusion. *See Combat Veterans*, 795 F.3d at 153. Nothing in the Statement of Reasons suggests the controlling commissioners thought otherwise.

19

While the dismissal of Complaint Two is reviewable, End Citizens United has failed to show the dismissal was contrary to law. The controlling commissioners reasonably credited the general counsel's careful evidentiary determinations and concluded the record provided no reason to believe a violation had occurred.

\* \* \*

The Commission's dismissal of Complaint One was an unreviewable exercise of prosecutorial discretion. The dismissal of Complaint Two was reviewable, and the district court correctly held the Commission's dismissal was not contrary to law. We therefore affirm the district court's judgment as modified.

*So ordered.*

PILLARD, *Circuit Judge*, concurring in part and dissenting in part:   The Federal Election Commission (FEC or Commission) dismissed two complaints.   I agree with the majority that the Commission's dismissal of the second complaint is reviewable and that it was not contrary to law. Accordingly, I join Part II.B. of the majority opinion.   I dissent from the majority's ruling that an invocation of enforcement discretion by a non-majority of commissioners as to certain claims in the first complaint prevents us from reviewing that complaint.   Even if I agreed that such a non-majority statement barred judicial review, I would dissent from the court's decision to apply that bar more broadly than did the commissioners themselves.

Congress passed the Federal Elections Campaign Act (FECA) to address corrosive influences of money in politics. Responsive to the distinctive challenges of regulating political activity, FECA is unique among federal laws in three important ways.   First, to prevent partisan domination, the law's primary enforcer—the six-member Commission—has no partisan majority or chair and cannot officially take enforcement actions without a bipartisan majority.   Second, to avoid nullification of FECA by a non-majority bloc of commissioners refusing to act on apparent violations of campaign-finance laws, Congress made such refusals to act—no matter the reason—reviewable in court.   If a court holds that the allegations or evidence before the FEC present a legally tenable claim, the Commission gets another chance to enforce.   Recognizing that the Commission might still deadlock, FECA includes a third distinctive feature, available only if the Commission fails to move forward: a private right of action to take up the case independent of FEC resources or initiative.

Five years ago, a divided panel of this court in *Citizens for Resp. & Ethics in Washington v. FEC* (*Commission on Hope I*), 892 F.3d 434 (D.C. Cir. 2018), upended this carefully crafted statutory scheme.   Embracing a position that no party

2

had even briefed and that the FEC disclaimed, the court held that *Heckler v. Chaney*, 470 U.S. 821 (1985), enables a non-majority bloc of commissioners to shield nonenforcement decisions from judicial review, and thereby extinguish the private right of action, just by invoking the words "prosecutorial discretion." Three years later, another divided panel embraced that misguided decision. *Citizens for Resp. & Ethics in Wash. v. FEC* (*New Models I*), 993 F.3d 880, 882 (D.C. Cir. 2021).

I have explained elsewhere why those rulings conflict with FECA's terms, structure, and purpose; with the Supreme Court's decision in *FEC v. Akins*, 524 U.S. 11 (1998); and with our decisions in *Chamber of Commerce v. FEC*, 69 F.3d 600 (D.C. Cir. 1995), *Democratic Congressional Campaign Committee v. FEC* (*DCCC*), 831 F.2d 1131 (D.C. Cir. 1987), and *Orloski v. FEC*, 795 F.2d 156 (D.C. Cir. 1986). *See Citizens for Resp. & Ethics in Wash. v. FEC* (*Commission on Hope II*), 923 F.3d 1141, 1145 (D.C. Cir. 2019) (Pillard, J., dissenting from denial of rehearing *en banc*); *see also Commission on Hope I*, 892 F.3d at 442-46 (Pillard, J., dissenting). My colleagues have voiced similar concerns. *See Citizens for Resp. & Ethics in Wash. v. FEC* (*New Models II*), 55 F.4th 918, 922-32 (D.C. Cir. 2022) (Millett, J., dissenting from the denial of rehearing en banc); *New Models I*, 993 F.3d at 895-906 (Millett, J., dissenting); *Campaign Legal Ctr. & Democracy 21 v. FEC*, 952 F.3d 352, 358-63 (D.C. Cir. 2020) (Edwards, J., concurring); *Commission on Hope II*, 923 F.3d at 1142 (Griffith, J., concurring in the denial of rehearing *en banc*).

Since our court's wrong turn in applying *Heckler* to effectively scuttle FECA's enforcement mechanism, partisan blocs of commissioners have taken advantage of the error. They have routinely cited "prosecutorial discretion" to stymie

3

judicial scrutiny of apparently serious FECA violations, evade the stimulus to move forward to enforce the law that a correct legal interpretation could provide, and annul the private right of action that Congress authorized. As Judge Millett has noted, "[s]ince *Commission on Hope*, approximately two-thirds of Commission cases dismissed contrary to the General Counsel's reason-to-believe recommendation have included a reference to prosecutorial discretion." *New Models II*, 55 F.4th at 929 (Millett, J., dissenting from the denial of rehearing *en banc*).

Today, the majority triples down. In applying the two mistaken rulings, it compounds their error: The opinion incorrectly concludes that the commissioners invoked enforcement discretion as to all the claims in the first complaint, Maj. Op. 9, when in reality they did so only with respect to a portion of them. Because *Commission on Hope* and *New Models* flout binding precedent, they are not themselves "binding on this panel." Maj. Op. 12. And even if they were, nothing in those cases prevents us from considering the claims the blocking commissioners dismissed on their merits. I respectfully dissent in part.

I.

The majority obscures important components of the statute we are tasked with interpreting, so I begin with a fuller recap.

A.

To protect the democratic process and bolster public confidence in it, FECA "seeks to remedy any actual or perceived corruption of the political process." *Akins*, 524 U.S. at 14. One of the ways it does so is by limiting the sources and amounts of expenditures and contributions made "for the purpose of influencing any election for Federal office." 52 U.S.C. § 30101(8)(a)(i), (9)(A)(i); *id.* § 30116. Soon after

4

Congress enacted FECA, however, the Supreme Court began to invalidate many of the Act's expenditure limits as contrary to the First Amendment's guarantee of freedom of speech. *See Buckley v. Valeo*, 424 U.S. 1, 58 (1976) (declaring unconstitutional various limits on individual, candidate, and campaign expenditures); *see also, e.g.*, *Citizens United v. FEC*, 558 U.S. 310, 365 (2010) (declaring unconstitutional the limit on corporate expenditures now codified at 52 U.S.C. § 30118(b)).  Those decisions leave FECA's other primary tool—disclosure requirements, *see, e.g.*, 52 U.S.C. § 30104— to do much of the work of addressing corrosive influences of money in politics.  Even as the Court struck down expenditure limits, it sustained disclaimer, registration, and disclosure requirements, approving of them as less restrictive ways to "enable[] the electorate to make informed decisions and give proper weight to different speakers and messages." *Citizens United*, 558 U.S. at 371.

Compliance with campaign finance rules depends on effective enforcement and its deterrent effects.  Primary enforcement responsibility lies with the FEC.  *See* 52 U.S.C. § 30107(a)(6).  The Commission is composed of six members, no more than three of whom may be affiliated with a single political party.  *Id.* § 30106(a)(1).  All decisions must "be made by a majority vote of the members of the Commission," with the important enforcement decisions specifically requiring a bipartisan majority of four or more votes.  *Id.* § 30106(c).  That means it always takes a majority—indeed, assuming no abstentions, a bipartisan majority—to "exercise" the Commission's "duties and powers."  *See id.*

In addition to conducting its own investigations, the Commission can act on complaints from "[a]ny person" alleging campaign finance violations.  *Id.* § 30109(a)(1), (2).

5

FECA maps out a four-step enforcement process for the Commission to follow in response to a complaint.

- First, the Commission votes on whether there is "reason to believe" that a violation has occurred. *Id.* § 30109(a)(2). To tee up such a vote, the Commission's Office of General Counsel reviews the submissions—including the complaint (with any attached materials such as sworn affidavits) and response—and offers its recommendations. *Guidebook for Complainants and Respondents on the FEC Enforcement Process*, FEC, at 11-12 (May 2012).[1]   If four commissioners vote that there is reason to believe, the Commission "*shall* make an investigation of such alleged violation." 52 U.S.C. § 30109(a)(2) (emphasis added).
- Second, after the investigation, the Commission votes on whether there is "probable cause to believe" that a violation has occurred. *Id.* § 30109(a)(4)(A)(i). If four commissioners agree there is probable cause, the Commission "*shall* attempt" informal conciliation efforts. *Id.* (emphasis added).
- Third, the Commission votes on whether to approve a conciliation agreement. *Id.*
- Finally, if the conciliation agreement fails to garner four votes, "the Commission *may*, upon an affirmative vote of 4 of its members, institute a civil action for relief" in federal district court. *Id.* § 30109(a)(6)(A).

  But the Commission need not follow this four-step process in every case. It has the power to "vote to dismiss" a complaint at any time. *Id.* § 30109(a)(1). As with "[a]ll decisions of the Commission," dismissal requires a "majority vote." *Id.* § 30106(c). One reason the Commission might dismiss a

---

[1]    https://www.fec.gov/resources/cms-content/documents/policy-guidance/respondent_guide.pdf.

6

complaint is if the commissioners deadlock—that is, fail to
obtain a majority as to whether (or how) to proceed. As a
safeguard against unreasoned deadlocks by commissioners not
enforcing the law, Congress explicitly provided for judicial
review of both "dismissal" decisions and "failure[s] to act." *Id.*
§ 30109(a)(8)(C). If the Commission dismisses a complaint or
fails to act on it within 120 days, an aggrieved party "may file
a petition" in federal district court. *Id.* § 30109(a)(8)(A). The
court may then "declare [whether] the dismissal of the
complaint or the failure to act is contrary to law." *Id.*
§ 30109(a)(8)(C). A dismissal is "contrary to law" if, among
other things, the Commission relied on an impermissible
construction of FECA or if the dismissal was otherwise
arbitrary, capricious, or an abuse of discretion. *Orloski*, 795
F.2d at 161.[2]

B.

As noted above, FECA's judicial review provision is
"unusual." *Chamber of Commerce*, 69 F.3d at 603. Generally,
as the Supreme Court has explained, "an agency's decision not
to undertake an enforcement action . . . [is] not subject to
judicial review." *Akins*, 524 U.S. at 26 (citing *Heckler*, 470
U.S. at 832). But FECA "explicitly indicates the contrary"—
*i.e.*, that the Commission's decision not to undertake an
enforcement action *is* subject to judicial review. *Id.*

To facilitate that review, commissioners voting against the
General Counsel's enforcement recommendation have an

---

[2]    The majority suggests in dicta that *Orloski* and its progeny
wrongly incorporate arbitrary-and-capricious and abuse-of-
discretion review into FECA's contrary-to-law standard. Maj. Op.
7-8 n.3. I would not wander so far afield. The appellee raised no
objection to those standards of review, instead quoting as governing
law the very standards the majority would reject. Appellee Br. 6, 28.

7

opportunity to issue one or more statements explaining the reasons for their votes. *Common Cause v. FEC*, 842 F.2d 436, 449 (D.C. Cir. 1988). Blocking commissioners' statements of reasons help "to make judicial review a meaningful exercise," *FEC v. Nat'l Republican Sen. Comm.*, 966 F.2d 1471, 1476 (D.C. Cir. 1992). A non-majority cannot speak for the Commission, 52 U.S.C. § 30106(c), but non-majority statements can cast light on the reasons for those members' votes. We have long considered both statements of reasons and FEC General Counsel's reports in determining whether a Commission action in dismissing a case is "contrary to law." *DCCC*, 831 F.2d at 1132, 1134-35.

FECA's judicial review provision is unusual for another reason. Even when a court determines that a dismissal or failure to act is contrary to law, the Commission retains the option not to move forward with enforcement. It has 30 days to "conform" with the court's declaration by, for example, proceeding to investigate, 52 U.S.C. § 30109(a)(2), or seeking to conciliate as to, *id.* § 30109(a)(4)(i), an apparent FECA violation, *see id.* § 30109(a)(8)(C). If it declines to do so—for whatever reason—FECA empowers the original complainant to bring a "civil action to remedy the violation involved in the original complaint." *Id.* In other words, a court cannot force the Commission to enforce the law; the statute instead authorizes a private litigant to do so, and, even then, only following a judicial determination that the Commission's refusal to proceed was contrary to law.

In sum, judicial review under FECA is the countermeasure to otherwise predictable deadlock at the Commission. It is the court's role to detect statutory misreading and thereby prod a reluctant FEC to act. And, where the Commission remains inert, the court's ruling paves the way for private enforcement. But the court today continues along the path marked by the

8

wrong turn in *Commission on Hope*, enabling a non-majority of the Commission to diminish the court's role under FECA and to eliminate the private right of action.

## II.

For our purposes, the facts of this case can be briefly summarized.  End Citizens United filed two administrative complaints against then-candidate Rick Scott, his campaign, and New Republican Political Action Committee (New Republican).  Because I agree with the majority's treatment of the second complaint, I focus on the first.  As relevant here, the first complaint contained four allegations: (1) that Scott failed to timely file a statement of candidacy in violation of 52 U.S.C. § 30102(e)(1); (2) that Scott's campaign failed to timely file the relevant organizational paperwork and disclosure reports in violation of 52 U.S.C. §§ 30103(a), 30104; (3) that New Republican impermissibly raised and spent money in violation of 52 U.S.C. § 30125(e); and (4) that Scott impermissibly raised and spent money in violation of 52 U.S.C. § 30125(e).  I refer to the first two allegations as "Filing Claims," and the latter two as "Soft-money Claims."

The Commission held four substantive votes.  First, it voted on whether there was "reason to believe" that the Filing Claims stated FECA violations.  The Commission split 3-3, so the vote "failed."  J.A. 270 (May 28, 2021, Vote Certification).  A few weeks later, the Commission voted on: (1) whether to dismiss the Filing Claims "under *Heckler v. Chaney*"; (2) whether there was "no reason to believe" the Soft-money Claim against New Republican stated a FECA violation; and (3) whether to dismiss the Soft-money Claim against Scott.  Again, the Commission was evenly divided, so those votes also "failed."  J.A. 272 (June 14, 2021, Vote Certification).  Deadlocked, the Commission agreed to "[c]lose the file,"

9

which administratively closed the case.  J.A. 273 (June 14, 2021, Vote Certification).  Later, the so-called controlling commissioners—the ones who voted against moving forward with enforcement—issued a statement of reasons.  They explained that they (1) "exercised [their] prosecutorial discretion regarding" the Filing Claims; (2) "voted to find no reason to believe" that New Republican violated the soft-money ban; and (3) "dismissed [the Soft-money Claim against Scott] for lack of evidence."  J.A. 290-91.

III.

The majority concludes that the dismissal of the first complaint is "unreviewable" under "binding precedent" because "the controlling commissioners expressly invoked their prosecutorial discretion."  Maj. Op. 9, 11.  I disagree.  First, *Commission on Hope* and *New Models* are not binding precedent because, as noted above, they conflict with earlier decisions of the Supreme Court and this court.  *See Sierra Club v. Jackson*, 648 F.3d 848, 854 (D.C. Cir. 2011) ("[W]hen a decision of one panel is inconsistent with the decision of a prior panel, the norm is that the later decision, being in violation of that fixed law, cannot prevail.").  Second, even assuming *Commission on Hope* and *New Models* are binding precedent, the majority is wrong that all of the dismissals are unreviewable.

A.

The majority repeats the mistakes from *Commission on Hope* and *New Models*, which continue to call out for correction.  Those cases held that, when a non-majority partisan bloc of commissioners invokes enforcement discretion to justify dismissing a complaint, courts cannot review that decision under *Heckler v. Chaney*, 470 U.S. 821.  For at least three reasons, that is incorrect.

10

First, *Heckler* teaches that an "*agency's* decision not to prosecute or enforce . . . is a decision generally committed to an agency's absolute discretion." 470 U.S. at 831 (emphasis added). To count as action by the Commission, a decision to "dismiss" a claim must "be made by a majority vote." 52 U.S.C. §§ 30106(c), 30109(a)(1). A dismissal vote predicated on prosecutorial discretion by a majority of commissioners, for example, would amount to an agency decision to refuse enforcement. If *Heckler* applied to FECA, that decision might be unreviewable. In this case, though, the Commission deadlocked; it could not garner a majority vote to do anything other than close the file.

Relying on *Commission on Hope* and *New Models*, the majority erroneously treats the three controlling commissioners' statement explaining their votes against enforcement as the Commission's decision to refuse enforcement. Maj. Op. 9-10. A statement of reasons, even by a non-majority causing a deadlock, explains the standstill and helps "make judicial review a meaningful exercise." *Nat'l Republican Sen. Comm.*, 966 F.2d at 1476. But we do not—and cannot—treat the controlling commissioners' rationales or votes as an "exercise" of the Commission's "duties and powers." 52 U.S.C. § 30106(c). To the contrary, we have explained that a statement of reasons for a non-majority's vote cannot be an "*official* Commission decision," since the latter requires "at least a 4-2 majority vote." *Common Cause*, 842 F.2d at 449 n.32 (emphasis in original). What is more, FECA also provides for review of a "failure to act" on a complaint within 120 days, 52 U.S.C. § 30109(a)(8)(C), implying that a court may evaluate the legality of inaction even in the absence of any vote or statement of reasons.

Under the majority's view, it would make no difference whether a partisan bloc of three commissioners or a bipartisan

11

majority of four commissioners voted to dismiss a claim based on prosecutorial discretion—both would be unreviewable. But under FECA, there is a critically important difference between partisan and bipartisan action. Even assuming a bipartisan majority's vote to exercise prosecutorial discretion defeats judicial review, affording that power to a non-majority makes a mockery of the "carefully balanced bipartisan structure which Congress has erected." *Common Cause*, 842 F.2d at 449 n.32. It is perverse to treat a non-majority's statement of reasons, elicited to facilitate judicial review, as instead its ticket to bypass judicial review altogether. That alone shows that *Commission on Hope* and *New Models* are wrong.

Second, even if it were appropriate to treat a non-majority invocation of prosecutorial discretion as an official Commission decision, *Heckler* still would not apply. *Heckler*'s presumption of non-reviewability is just that: a presumption. 470 U.S. at 831. It "may be rebutted where the substantive statute has provided guidelines for the agency to follow in exercising its enforcement powers." *Id.* at 833. In *Akins*, the Supreme Court ruled that FECA categorically rebuts that presumption because it "explicitly indicates" that the Commission's decision "not to undertake an enforcement action" is subject to judicial review to determine whether the Commission's passivity is contrary to law. 524 U.S. at 26. Judge Silberman, speaking for our *en banc* court in *Akins*, described judicial review under FECA as "an unusual statutory provision which permits a complainant to bring to federal court an agency's refusal to institute enforcement proceedings." 101 F.3d 731, 734 (D.C. Cir. 1996) (distinguishing *Chaney*), *vacated on other grounds*, 524 U.S. 11 (1998). *Commission on Hope* and *New Models* squarely contravene the Supreme Court's and our own views in *Akins*, and multiple other decisions of our circuit affirming the reviewability of the Commission's non-enforcement decisions. *See, e.g.*, *Chamber*

12

*of Commerce*, 69 F.3d at 603; *DCCC*, 831 F.2d at 1133; *Orloski*, 795 F.2d at 161.

Third, *Heckler* emphasizes that an agency's non-enforcement decision is generally unreviewable because its enforcement activity should be "committed to an agency's absolute discretion." 470 U.S. at 831. That is so because the agency must itself assess "whether agency resources are best spent on this violation or another, whether the agency is likely to succeed if it acts, [and] whether the particular enforcement action requested best fits the agency's overall policies." *Id.* But judicial review under FECA need not intrude on the Commission's discretion to balance those factors. To the contrary, FECA's creation of a private right of action means that, if the Commission declines to investigate a complaint that a court holds legally sufficient to proceed, private citizens may take up the task without the Commission having to use its own resources or act under court direction. *See* 52 U.S.C. § 30109(a)(8)(C). For this reason, too, the separation-of-powers concerns that animated *Heckler* (and that my colleagues referenced in *New Models I*, *see* 993 F.3d at 888) are wholly misplaced in the context of FECA.

Crucially, the case before us does not raise the question whether there may be some circumstances in which FECA authorizes the Commission to exercise unreviewable enforcement discretion. For example, a bipartisan majority of commissioners might be able to shut down the enforcement process at the reason-to-believe phase by explicitly dismissing a complaint on enforcement-discretion grounds. 52 U.S.C. § 30109(a)(1); Guidebook at 12. In this case, though, the vote over whether to dismiss the Filing Claims "under *Heckler v. Chaney*" "failed"—it deadlocked 3-3. J.A. 272 (June 14, 2021, Vote Certification). And the commissioners never even held such a vote with respect to the Soft-money Claims. So,

13

assuming a bipartisan majority of the Commission could wield unreviewable enforcement discretion, it did not do so in this case. The Act also expressly grants discretion to halt a case if, after the complaint travels through all the prescribed checkpoints, the Commission votes against filing a civil action for relief. 52 U.S.C. § 30109(a)(6)(A). At that stage, the statute switches from specifying that the commission "*shall*" proceed where statutory standards are met, *id*. § 30109(a)(2), (a)(4)(A)(i) (emphasis added), to providing that "the Commission *may*, upon an affirmative vote of 4 of its members, institute a civil action for relief," *id*. § 30109(a)(6)(A) (emphasis added). This case, however, stalled out at the very beginning, at the reason-to-believe phase. A non-majority incantation of enforcement discretion at that phase cannot interfere with the court's obligation under FECA to decide whether the Commission's inaction or dismissal was "contrary to law"—as it would be, for example, if the commissioners voted to dismiss a complaint that, under the law as properly understood, gave "reason to believe that the respondent has committed or is about to commit a violation" of FECA or the presidential campaign funding laws. *Id*. § 30109(a)(2), (a)(8)(C).

All these mistakes have something in common: They ignore the many ways in which both the Commission and FECA's enforcement scheme are uniquely crafted to avoid partisan gridlock. The Supreme Court in *Akins* appreciated how Congress intended to avoid that gridlock. And, before *Commission on Hope*, we did too.

## B.

The majority not only errs by applying *Commission on Hope* and *New Models*; it also misreads the record in this case. The majority rules that "the controlling commissioners

14

expressly invoked their prosecutorial discretion when dismissing the complaint." Maj. Op. 9. That is incorrect. The controlling commissioners were clear in their statement of reasons that they invoked prosecutorial discretion only with respect to the Filing Claims. Because the Soft-money Claims were dismissed on the merits, they are reviewable.

The majority contends that my opinion "misreads" the statement of reasons, Maj. Op. 11 n.4, but the statement speaks for itself. Over and again, the controlling commissioners made clear that they invoked prosecutorial discretion only with respect to the Filing Claims. In the introduction, the controlling commissions explained that they "found no reason to believe that New Republican violated the soft money rules and dismissed the allegations that Scott untimely filed his candidacy and organization paperwork under *Heckler v. Chaney*." J.A. 282. In a footnote, the controlling commissioners addressed the Soft-money Claim against Scott: "Having determined there was no path forward on those elements, we were required to dismiss" the Soft-money Claim because that claim "would have required, at a minimum, a threshold finding that Scott had failed to file a statement of candidacy at the appropriate time, or that New Republican had violated the soft money rules." J.A. 282 n.2. Later, the controlling commissioners repeated that "as regards Rick Scott's alleged failure to timely file his candidacy and committee paperwork, we invoked our prosecutorial discretion pursuant to *Heckler v. Chaney*." J.A. 290. And, in their conclusion, they summarized their votes:

> For the foregoing reasons, we voted to find no reason
> to believe that New Republican violated the soft
> money ban, exercised our prosecutorial discretion
> regarding the allegations that Scott and his campaign
> committee failed to timely file candidacy and

15

organization forms, and dismissed the remaining allegations against the Respondents for lack of evidence.

J.A. 290-91.

The controlling commissioners repeatedly tell us that they are dismissing the Soft-money claims on the merits, but the majority refuses to take them at their word. It deems the dismissal of all four claims unreviewable on the theory that "the controlling commissioners expressly invoked their prosecutorial discretion when dismissing the complaint." Maj. Op. 9. There is no basis for that conclusion. The majority emphasizes that the controlling commissioners at one point say that they "determined that this Matter merited the invocation of our prosecutorial discretion." J.A. 290. The majority appears to read "this Matter" to mean "all the claims" in the first complaint. Maj. Op. 11 n.4. That reading conflicts with what the controlling commissioners actually say. After giving their reasons for invoking enforcement discretion, the controlling commissioners clarify the scope of the invocation: "Accordingly, as regards Rick Scott's alleged *failure to timely file* his candidacy and committee paperwork, we invoked our prosecutorial discretion pursuant to *Heckler v. Chaney*." J.A. 290 (emphasis added). And they are even clearer in the conclusion, where they invoke prosecutorial discretion only "regarding the allegations that Scott and his campaign committee *failed to timely file* candidacy and organization forms." J.A. 290-91 (emphasis added). As to the Soft-money Claims, they say that they "voted to find no reason to believe" New Republican violated the soft money ban, and dismissed the Soft-money Claim against Scott for "lack of evidence." J.A. 290-91.

16

The majority erroneously concludes that End Citizens United "did not raise this argument on appeal." Maj. Op. 11 n.4. In fact, End Citizens United argued that dismissal of the Soft-money Claims was reviewable, Appellant's Br. 23-24, specifically described that dismissal as based not on enforcement discretion but on an erroneous interpretation of FECA, *id*. 18, and confirmed during oral argument that the controlling commissioners invoked discretion only with respect to the Filing Claims, not the Soft-money Claims, *see* Oral Arg. Rec. at 7:43-9:48. The parties drew the same battle line in the district court, *compare* ECU Opp. to MTD 28-29, *End Citizens United PAC v. FEC*, No. 21-cv-2128 (D.D.C. Sept. 16, 2022), ECF No. 25*, with* New Republican Reply 11, ECF No. 29, and even New Republican does not assert forfeiture here.

The court has erred in empowering a partisan bloc of commissioners to invoke enforcement discretion to evade review the statute authorizes. Adding to the muddle that error has created, today's majority relies on the bloc's discretionary reasoning about the Filing Claims to avoid reviewing the other claims in the first complaint. Because the controlling commissioners did not invoke enforcement discretion with respect to the Soft-money Claims, I would hold the dismissal of those claims reviewable even under *Commission on Hope* and *New Models*.

\* \* \*

As I have explained, *Commission on Hope* and *New Models* contravene FECA, ignore binding precedent, and undercut the distinctive features Congress crafted to prevent partisan gridlock. The majority's first mistake is to act as if those decisions are "binding on this panel." Maj. Op. 12.

17

In any event, the majority overstates the reach of those cases.[3]   It deems the dismissal of the Soft-money Claims unreviewable even though the controlling commissioners never invoked prosecutorial discretion with respect to them. That ruling does not follow from *Commission on Hope* or *New Models*.  If our court is going to authorize a non-majority of commissioners to thwart FECA by invoking prosecutorial discretion, we should take care to do so only where there is an actual invocation.  I respectfully dissent in part.

---

[3]    Indeed, the majority's premise—that *Commission on Hope* and *New Models* govern this case—is itself questionable.  Those cases are best read as confined to circumstances in which the controlling commissioners invoke prosecutorial discretion for reasons that are independent of their view of the merits of the claim.  *See New Models II*, 55 F.4th at 920-21 (Rao, J., concurring in the denial of rehearing *en banc*) (explaining that judicial review was foreclosed "[b]ecause the controlling commissioners relied on an independent ground of prosecutorial discretion"); *see also, e.g.*, *Campaign Legal Ctr. v. FEC*, No. 22-5339, 2024 WL 57355, at *5 (D.C. Cir. Jan. 5, 2024) (applying *New Models* "[b]ecause the Commission's invocation of discretion was offered 'in addition' to its legal analysis," rather than intertwined with it).